# WHEELING.

WHEELING, PARKERSBURG AND CINCINNATI TRANS-
PORTATION COMPANY *v.* CITY OF WHEELING.

### July 17, 1876,

1876.
June Term.

1. The city of Wheeling being authorized by law to assess, levy and collect an annual tax for the use of the city, on personal property in the city, not to exceed fifty cents on every hundred dollars of the assessed valuation thereof, the assessment and collection of an annual tax upon the value of steamboats, of twenty tons burden or more, belonging to the Wheeling, Parkersburg and Cincinnati Transportation Company, incorporated and organized by and under laws of the State of West Virginia, and whose chief office is in said city and all of whose officers reside therein, and said city being the home port of said steamboats, is not in violation of, or prohibited by, the third paragraph of the eighth section of the first article of the Constitution of the United States; nor, of the third paragraph of the tenth section of the first article of the Constitution of the United States; nor, of any other provision of said Constitution.

2. The taxes assessed and collected by said city, upon said steamboats of said Company, according to the value thereof, as personal property, were, under the facts agreed in this case, as stated in the opinion of this Court, filed in this cause, lawfully assessed and collected by the city from said Company.

*Supersedeas* to a judgment of the municipal court of Wheeling—granted on the petition of the plaintiff below—rendered on the seventeenth day of November, 1875.

The plaintiff was The Wheeling, Parkersburg and Cincinnati Transportation Company, and the defendant the City of Wheeling.

All the material facts appear in the opinion of the court.

The Hon. Gibson L. Cranmer, judge of said municipal court, presided at the trial below.

*Henry M. Russell* for the plaintiff in error.

*George W. Jeffers* and *Caldwell & Caldwell* for the appellee.

HAYMOND, PRESIDENT:

"The plaintiff brought an action of trespass on the case in assumpsit, in the municipal court of Wheeling, against the defendant, on the thirteenth day of July, 1875. Afterwards, at August rules, 1875, plaintiff filed its declaration containing two special counts, and the common counts in assumpsit. The first and second counts are special. With the declaration, the plaintiff filed a bill of particulars of its claim against the defendant. The account is dated "July 12th—Taxes illegally collected for 1870, $120. do. 1871, $125. do. 1872. $125. do. 1873, $90. do. 1874, $60." aggregating $520. At the November term, 1875, of said court, the defendant appeared to the action, and filed a demurrer to the declaration, and to each court thereof. The demurrer to the first and second counts was sustained, by the court and overruled as to the other counts. The defendant then plead the general issue of non-assumpsit, on which issue was joined. A jury was waived by consent, and the court heard and decided the cause in lieu of a jury, upon an agreed statement of facts filed in the case, which contained all the evidence offered. The court rendered judgment at the same term in favor of the defendant, on the facts agreed, and against the plaintiff, for the costs of suit. To the action of the court in rendering judgment for the defendant as aforesaid, the plaintiff excepted and tendered its bill of exceptions, which was signed, sealed and made a part of the record. The cause has been brought to this Court by *supersedeas*. For the sake

*[margin: 1876. June Term.]*

*[margin: W., P. & C. Transportation Co. v. City of Wheel'g.]*

1876.
June Term.

W., P. & C.
Transportation
Co.
v.
City of Wheel'g

of brevity, it is proper to consider the judgment of the court upon the demurrer to the special counts, in connection with the judgment of the court upon the facts agreed, as the facts alleged in each of the special counts are substantially, for the purposes of this suit, the same as the facts agreed. If the facts agreed are insufficient to sustain the plaintiff's action, then the said first and second counts are insufficient in law. It is proper, however, to remark, that the plaintiff, in this case, has had, under the common counts, all the benefit he, could have derived from each and both special counts, if the demurrer had not been filed to these counts, as the parties agreed the facts in the cause, and submitted them to the court for its judgment thereon.

It appears by the bill of exceptions in the cause, that the facts agreed, and upon which the court grounded its judgment, are substantially as follows, viz:

That the City of Wheeling is, and was, before the year 1868, a corporation chartered as a city under the laws of Virginia and West Virginia; that the Wheeling, Parkersburg and Cincinnati Transportation Company, is a corporation chartered and organized in the year 1868, under the laws of the State of West Virginia, for the purpose of carrying on a transportation business, with steamboats and barges, upon the western rivers; that a portion of its stockholders reside in West Virginia and part in Ohio; that the officers of the company reside in Wheeling, and that plaintiff's principal office is there; that during the years 1870, 1871, 1872, 1873 and 1874, the plaintiffs owned eight steamboats, having a different number of them at different times during the said years, and owning, usually, two, three or four at the same time; that at the time of the institution of this suit, the plaintiff owned four of said steamboats; that each of said steamboats is of greater burden than twenty tons; that during the five years the plaintiff owned no other property whatever, except the said steamboats and their appropriate outfits, and during all of the said years, the

1876.
June Term.

W., P. & C.
Transportation
Co.
v.
City of Wheel'g.

plaintiff employed all of said vessels, during such period as it owned them, respectively, in making daily voyages between the city of Wheeling and the city of Parkersburg, in Wood county, West Virginia, a distance of about one hundred miles down the Ohio river; that each of said vessels began its voyage at Wheeling, every alternate day about 10:30 A. M., touched in order to discharge and receive passengers and freight, at various towns along the river, some of which are in the State of Ohio, and some in the State of West Virginia, arrived at Parkersburg about midnight, remained there at the wharf until about daylight, when it left on its return voyage; stopped at the same places, and for the same purposes, on its way up the river, and reached Wheeling between midnight and morning, according to the stage of the water in the river; remaining at the Wheeling wharf from that time until its hour of departure; that these voyages were made for the purpose of transporting for hire, passengers and freight between the said various ports, and much of the plaintiff's business consisted in transporting passengers and freight from one port in Ohio, to another in the same state, some in transporting them from one port in West Virginia, to another in Ohio, and some in transporting them from one port in West Virginia, to another in the same State; that these vessels were used in no other manner than as herein set forth; that there were always, at least, three of the said boats either at the wharves of said city, or lying along some portion of the bank of said river, within the corporate limits of said city; that each of said vessels, during such time as it was owned by the plaintiff, was duly enrolled and licensed as a coasting vessel, under the laws of the United States, and the plaintiff paid for it all dues, fees and charges, which were demandable under the laws of the United States; that the plaintiff has paid the defendant various sums of money for the use of its wharves by the said vessels, and all that was demanded on that account, and no part of the taxes hereinafter

mentioned were demanded as wharfage dues; that a por-
tion of the laws of the State of West Virginia, under
which the taxes hereinafter mentioned were assessed, lev-
ied and collected, is as follows: 'The council of the city
of Wheeling shall have authority under such regulations
as they may prescribe by ordinance, to assess, levy and
collect an annual tax for the use of the city, on personal
property, in the city, not to exceed in any year, fifty cents
on every hundred dollars of the assessed valuation
thereof; and the words personal property shall be deem-
ed to include all subjects of taxation which the assessors,
acting under the laws of the State, are, or shall be, by
law, required to enter on their personal property books
for the purpose of State taxation;' that another portion
of the said laws gives the right to the person appointed
to collect such tax, in case it shall not be paid, to take
reasonable distress of any personal property in the city
belonging to the delinquent, to sell the same, and pay the
tax out of the proceeds; that George Q. Black, the col-
lector hereinafter named, was, during the years 1874 and
1875, the person duly appointed by the city to collect
its taxes, as was Jacob M. Warden, (the taxes collecta-
ble by whom, the said George Q. Black, was at the time
when he collected them, duly authorized to collect,) dur-
ing the years 1870, 1871, 1872 and 1873; that during
the years 1870, 1871, 1872, 1873 and 1874, the plaintiff
was, by the regular officers of said city, assessed with per-
sonal property in various amounts; that there is no ob-
jection to the amount of these assessments; that the tax
bills, hereinafter set out, are copies of the assessors books,
so far as they relate to the plaintiff, except those parts of
the tax bills which are receipts; that on the tenth day
of July, 1875, the said George Q. Black, as collector, as
aforesaid, demanded of the plaintiff taxes for said years
1870, 1871, 1872, 1873 and 1874, in the amounts and ac-
cording to the assessments contained in said tax bills,
and threatened to levy on one of plaintiff's boats, unless
the said taxes were paid, and, the plaintiff then, under

protest, and in order to escape said levy, and explaining to the said collector that it believed the taxes illegal, paid them, with the intention of sueing for their recovery, and paid the said taxes to said Black for said city; that the dates and amounts are correctly set forth in the said tax bills, and the tax bills were then signed and delivered, as receipts, to the plaintiff, by the said Black. The tax bill, for each of said years, against the plaintiff, is set out at large, and at the bottom of each, is a receipt of payment thereof, as of tenth day of July, 1875, and signed, George Q. Black, D. C., For Jacob M. Warden, City Col., the only charge against plaintiff in the tax bill of 1870, is as follows, viz: 'On total valuation, $24,000 at 50 cents on every $100 val. p. p., $120.00;' and in the tax bill of 1871, 'On total valuation $25,000, at 50 cents on every $100. valuation p. p. $125. School Levy, City Dist., 30 cents, and for building fund 7 cents on every $100. valuation r. and p. p., $92.50 (total) $217.50;' and in tax bill for 1872, 'On total valuation, $25,000, at 50 cents on every $100. valuation p. p., $125.00 school levy, City District, 25 cents on every $100. valuation r. and p. p. $112.50 (total) $237.50;' and in tax bill for 1873, 'On total valuation $30,000, at 30 cents on every $100, val. p. p. $90.00. School levy, city dist., 20 cents, and for building fund, 15 cents on every $100. val. r. and p. p. $105.00, (Total) $195.00;' and in tax bill for 1874, 'Total valuation personal property, $20,000. at 30 cents on every $100. valuation $60.00. School levy, city dist., 25 cents, and for building fund, 15 cents on every $100. val. r. est. and p. prop., $80.00, (Total) $140.00."

After setting out the said tax bills *in extenso*, the agreement of facts proceeds to state further, substantially, "that the abbreviations 'p. p.' in the said tax bills mean 'personal property;' that the amounts collected and named as 'school levy,' were not for the city; that the taxes so paid, to said Black, for the said city, were for the general expenses and purposes of the city, and not for any special

*1876.*
*June Term.*

W., P. & C. Transportation Co.
v.
City of Wheel'g

1876.
June Term.

W., P. & C.
Transportation
Co.
v.
City of Wheel'g

fund; that plaintiff, before bringing this suit, demanded from said city, the defendant, the taxes so paid; that in making the said assessment upon the plaintiff, its property was assessed according to value, and not according to any other rule of calculation, estimating its value in proportion to the assessments upon personal property, generally, in the said city."

It further appears by the bill of exceptions, that after the court found for the defendant upon the facts agreed, the plaintiff moved the court to set aside its said finding, and find for the plaintiff, and the court overruled the motion.

It is now here claimed by the plaintiff, that the court erred in its rulings and judgment in this:

*First.* The assessment of said taxes on said steamboats, for each of said years, and the collection thereof, was in violation of article one, section ten, paragraph three of the Constitution of the United States, which declares that "no State shall, without the consent of Congress, levy any duty of tonnage."

*Second.* That the assessment of said taxes for each of said years, and the collection thereof, was in violation of article one, section eight, paragraph three of said Constitution, which declares that Congress shall have power "to regulate commerce with foreign nations, and *among* the several States, and with the Indian tribes."

The first, and chief question, to be determined in this cause is, whether the assessment of the taxes upon the value of said steamboats against the plaintiff, and the collection of the taxes from the plaintiff, is prohibited by said two paragraphs of the Constitution of the United States, above quoted.

It is conceded, in argument, that the council of the city may levy and collect taxes annually for the use of the city, on personal property in the city, subject to certain limitations as to the amount of such tax, not necessary to specify here; that the personal

property which may be taxed, includes all subjects of taxation, which the assessors, acting under the laws of the State are, or shall be, by law, required to enter on their personal property books for the purpose of taxation. This seems to be the law, whether so admitted by the counsel or not. The steamboats in question, are certainly personal property, and subject to taxation according to their value, as other property by the State, for State purposes, and by the city for its use, unless they are exempt from such taxation by some constitutional provision or statutory law. The property upon which said taxes were levied and collected, was the steamboats aforesaid, and no other property. Whether the steamboats aforesaid under the facts and circumstances stated in the facts as agreed before the circuit court, are subject to taxation by the State or city as property, in the manner, the taxes involved in this case were assessed, though never determined by the Supreme Court of this State, is not new to the Supreme Court of the United States, and the highest judicial tribunals of some of the other States of the Union. The question has been maturely considered, and pronounced upon, by some the best judicial minds of the nation. In what are known as the Passenger Cases, commencing on page 287 of the 7th volume of Howard's Reports, Judge McLean says, on page 402: "A State cannot regulate foreign commerce, but it may do many things which, more or less, affect it. It may tax a ship, or other vessel, used in commerce, the same as other property, owned by its citizens. A State may tax the stages in which the mail is transported; but this does not regulate the conveyance of the mail, any more than taxing a ship regulates commerce. And yet, in both instances, the tax on the property, in some degree, affects its use." Were the steamboats a part of the personal property within the State, and a part of the personal property in the city as belonging to plaintiff? In the case of *Hayes v. The Pacific Mail Steamship Co.*, 17 Howard, 597, Nelson, Judge, on page 599, says:

1876.
June Term.

W., P. & C.
Transportation
Co.
v.
City of Wheel'g

1876.
June Term.

W., P. & C.
Transportation
Co.
v.
City of Wheel'g

"Whether the vessel leaving her home port for trade and commerce, visits, in the course of her voyage or business, several ports, or confines her operations in the carrying trade to one, are questions that will depend upon the profitable returns of the business, and will furnish no more evidence that she has become a part of the personal property within the State, and liable to taxation at one port, than the others. She is within the jurisdiction of all, or any one of them, temporarily, and for a purpose wholly excluding the idea of permanently abiding in the State, or changing her home port. Our merchant vessels are not unfrequently absent, for years, in the foreign carrying trade and unlading it from port to port, during all the time absent ; but they neither lose their national character, nor their home port." Wheeling was the home port of the steamboats of plaintiff. Plaintiff was, when the taxes were levied and collected, a corporation incorporated and organized under the laws of West Virginia, and plaintiff's chief office was at Wheeling, and its officers resided there. In the cases of *Cox v. The Collector* and *Trade Company v. Same*, 12 Wall., 204, according to the syllabus, it was decided by the Supreme Court of the United States :

"1. Although taxes levied, as on *property*, by a state upon vessels owned by its citizens, and based on a valuation of the same, are not prohibited by the Federal Constitution, yet taxes cannot be imposed on them by the State, at so much per ton of the registered tonnage. Such taxes are within the prohibition of the constitution, 'that no State shall, without the consent of Congress, lay any duty of tonnage." In the cases last cited, Justice Clifford, who delivered the opinion of the Court, which seems to have been unanimous, says, commencing on page 212: " Power to tax, with certain exceptions, resides with the States independent of the Federal Government, and the power, when confined within its true limits, may be exercised without restraint from any Federal authority They can not, however, without the consent of Congress,

lay any duty of tonnage, nor can they levy any imports or duties on imports or exports, except what may be absolutely necessary for executing their inspection laws, as, without the consent of Congress, they are unconditionally prohibited from exercising any such power.    Outside of these prohibitions , the power of the State to tax, extends to all [objects within the sovereign power of the States, except the means and instruments of the Federal Government. But ships and vessels owned by individuals, and belonging to the commercial marine, are regarded as the private property of their owners, and not as the instruments or means of the Federal Government, and, as such, *when viewed as 'property, they are plainly within the taxing power of the States, as they are not withdrawn from the operation of that power by any express or implied prohibition contained in the Federal Constitution.*    Argument, therefore, to show that they may be taxed as other property belonging to citizens of the State, is hardly necessary, as the opposite theory is indefensible in principle, contrary to the generally received opinion, and is wholly unsupported by any judicial determination.    Direct adjudications to support that proposition, are not to be found in the reported decisions of this Court; but there are several cases which concede that such a tax, if levied by a State, would be legal, and no doubt is entertained that the concession is properly made."    *Nathan v. Louisiana*, 8 Howard 82 ; *Howell v. Maryland*, 3 Gill 14.    Taxes levied by a State upon ships and vessels, owned by the citizens of the State *as property, based on a valuation of the same*, are not within the prohibition of the Constitution ; but it is equally clear and undeniable that taxes levied by a State upon ships and vessels, as instruments of commerce and navigation, are within that clause of the instrument, which prohibits the States from levying *any duty* of tonnage, without the consent of Congress.    Annual taxes upon property in ships and vessels are continually laid, and their validity was never

*1876.*
*June Term.*

W., P. & C.
Transportation
Co.
*v.*
City of Wheel'g

1876.
June Term.

W., P. & C.
Transportation
Co.
v.
City of Wheel'g

doubted or called in question. 12 Wall 213 and 214. In the case of *Morgan v. Parham*, 16 Wall. 471, which was decided December, 1872, according to the syllabus, it was decided:

"1. When a vessel is regularly registered in the port to which it belongs, that is to say, ' in the port nearest to which her owner, husband, or acting and managing owner usually resides,' [registered, *ex. gr.*, at New York,] the fact that she may be temporarily in a port of a State [as *ex. gr.*, Mobile, in Alabama,] other than that where her home port is, and engaged in lawful commerce—one of the daily line of steamers—between that port and the port of a yet third State, [as *ex. gr.*, New Orleans, in Louisiana] does not cause her to become incorporated into the personal property of the State of Alabama, and no State but that in which her home port is, has dominion over her for the purpose of taxation.

2. The fact that the vessel was enrolled by her master as a coaster at Mobile, Alabama, and that her license as a coaster was renewed from year to year, does not affect her registry in New York, or her ownership there. It accordingly does not change the rule."

In the case last cited, Justice Hunt, who delivered the opinion of the Court, says commencing on page 474: "The fact that the vessel was physically within the limits of the city of Mobile, at the time the tax was levied, does not decide the question. Thus, if a traveller on that day had been passing through that city, in his private carriage, or an emigrant with his worldly goods on a wagon, it is not contended that the property of either of these persons would be subject to taxation within the city. It is conceded by the respective counsel, that it would not have been. On the other hand, this vessel, although a vehicle of commerce, was not exempt from taxation on that score. A steamboat, or a post coach, engaged in local business within a State,'may be subject to local taxation, although it carry the mail of the United States. The commerce between the States may not be interfered

with by taxation or other interruption, but its instruments and vehicles may be. (*Gibbons v. Ogden*, 9 Wheaton 1; *Passenger cases*, 7 Howard 283). It is not, therefore, upon this principle that we are to decide the case. Nor does it fall within that range of cases of which *The Steamship Company v. The Port Wardens*, 6 Wall, 31 and *Gibbons v. Ogden* furnish illustrations.

In each of those cases, the taxation was upon a subject directly connected with the navigation of the public waters, and with the commerce of the country. In the first case, a statute had been passed requiring every vessel entering the harbor of New Orleans to pay five dollars to the port wardens, in addition to other fees, whether any service were performed or not. In the second case, vessels navigating the waters of the Hudson River were required to take a license for that purpose from the State of New York. The imposition in this class of cases, was a tax upon the use of the public waters of the country, and tended, immediately, to interfere with, and to obstruct, the commerce between the States. In the instance before us, the tax was upon a vessel at the wharf. It was, in this respect, as if a tax had been laid upon lumber or cotton lying on the dock at Mobile. This vessel was owned by, and employed in the service of, a resident of the State of New York. It was, primarily and presumptively, taxable under the authority of that State, and that State only. It is urged that her status, or condition, was affected by what was done, or neglected, in regard to her register and enrolment. In *Blanchard v. Martha Washington*, the law on this subject is thus explained: " Ships or vessels are required to be registered by the collector of the district in which shall be comprehended the port to which the same shall belong at the time of the registry, which port shall be claimed to be at, or nearest to which, the owner, if there be one, or, if more than one, the husband and acting manager resides. * * There was nothing, therefore, in her enrolment in the port of Mobile, that affected her

1876.
June Term.

W., P. & C.
Transportation
Co.
v.
City of Wheel'g

registry in New York, or her ownership in that place, or that tended to subject her to the taxation of the State of Alabama, under the circumstances stated. It is the opinion of the Court that the State of Alabama had no jurisdiction over this vessel for the purpose of taxation, for the reason that it had not become incorporated into the personal property of that State, but was there temporarily, and that it was engaged in lawful commerce between the States, with its *situs* at the home port of New York, where it belonged, and where its owner was liable to be taxed for its value. The case of *Hays v. The Pacific Mail Steamship Company*, 17 Howard 596, is decisive of the case before us."

In addition to the decisions of the Supreme Court of the United States which I have cited, there have been decisions, by some of the State Courts, of great weight, as authority, upon the question involved here. See *Perry v. Torrence*, 8 Ohio, 521 ; *Howell v. The State*, 3 Gill, 14; *Battle v. Corporation of Mobile*, 9 Ala. 234; *Lott, Tax Collector v. Mobile Trade Co.*, 43 Ala. 578. See, also, opinion of Judge Joynes, 20 Gratt. 424–425. In the case in 8 Ohio, 521, it was decided that " a State law, including steamboats as a portion of the property subject to taxation, is not unconstitutional." In this case, the court, in its opinion at the conclusion, says : " The conclusion, on the whole, is, that the tax complained of, does not interfere with the power of Congress to regulate commerce ; nor can it be regarded as a tonnage duty, because that is a tax which is levied upon the vessel as an instrument of navigation, and without reference to the place where she is owned."

It will be seen, on examination of the case of *Perry v. Torrence*, that the principle determined in that case fully determines that the levying and collecting the taxes involved in this case, was, and is, not prohibited by the Constitution of the United States.

In the case under consideration, the plaintiff is a West Virginia corporation ; all its officers reside at the city of

Wheeling, and its (plaintiff's) chief office was also at said city during all the time for which said taxes were levied and collected. The city was also the home port of the steamboats taxed, and the steamboats became incorporated into the property of the city, and were, justly and properly, liable to be taxed according to their value, as any other property in the city. The taxes assessed and collected upon said steamboats, according to their value as property, as was done in this case, were legally and properly assessed and collected, by the city, under the laws of this State; and the assessing and collecting the same is not prohibited by the Constitution of the United States.

Upon the whole, it seems to me that the finding and judgment of the municipal court of Wheeling, upon the facts agreed in this case, were right and proper, and not erroneous.

For the foregoing reasons, the judgment of the said municipal court of Wheeling, rendered in this cause, on the seventeenth day of November, 1875, is affirmed by this Court, with costs and $30 damages.

Moore and Green, Judges, concurred.

Edmiston, Judge, absent.

JUDGMENT AFFIRMED.