# CHARLESTON.

ISLAND CREEK FUEL CO. v. HARSHBARGER *et al*

Submitted December 4, 1913.   Decided December 16, 1913.

1. TAXATION—*Place*—*Property of Corporation.*

   Coal barges owned by a corporation having its principal office in one county, used by it in carriage of coal mined by it from a point in another county, where the coal is taken from cars transporting it to that point and placed in the barges for transportation to market, are chargeable with taxes only in that county wherein is such principal office. (p. 398).

2. SAME.

   Tow-boats and barges owned by a coal mining corporation having its principal place of business in one county, and using such boats and barges in transporting its coal from a point in another county to market, are assessable with taxes as investments in the county of its principal office. (p. 400).

3. SAME—*Assessment—Right to Injunction.*

   If the tow-boats and barges be erroneously assessed in another county, together with other property properly assessable therein, and the owner fails to apply to the board of review and equalization for correction thereof at the time and in the manner required by §129, Ch. 29, Code 1906, as amended by Ch. 80, Acts 1907, he can not thereafter question the validity of the assessment, or prevent the collection of taxes charged thereon, except for fraud or other adventitious circumstances, clearly averred and distinctly proved, whereby resort to such remedy was prevented. (p. 400).

   (POFFENBARGER, PRESIDENT, dissenting.)

Appeal form Circuit Court, Cabell County.

Bill by the Island Creek Fuel Company, against I. J. Harshbarger, sheriff, etc., and others. From a decree for defendants, plaintiff appeals.

*Affirmed.*

*Vinson & Thompson* and *E. M. Watts,* for appellant.

*Fred O. Blue,* and *Jean F. Smith,* for appellees.

LYNCH, JUDGE:

This is an appeal from a decree of the circuit court of Cabell county, upon a bill by the Island Creek Fuel Company against I. J. Harshbarger, sheriff of Cabell county, and J. R. Damron, treasurer of the city of Huntington, to restrain them from collecting taxes charged to the company for the year 1910; by which decree an injunction awarded on the bill was dissolved, and the bill dismissed on demurrer.

The Island Creek Fuel Company is a corporation under the laws of this state, engaged in mining and marketing coal. Its chief works and general office are at Holden in Logan county. There it mines coal, which it transports by rail to Huntington, and there dumps it from the cars into barges, and by towboats conveys it to Sekitan in the state of Ohio, where it is reloaded on railroad cars for distribution to market.

The fuel company owns the tow-boats and barges; also a tipple at Huntington, and trestle, tracks, and other appliances for transferring the coal from cars into the barges. In 1910 it returned to the assessor of Cabell county, for taxation, all these items of property, except the tow-boats and barges, which for the same year it returned to the assessor of Logan county, and on which it claims to have paid the taxes charged thereon for that year. But to the return for Cabell county the assessor, without the knowledge of the company, added the boats and barges, at a valuation of $71,000. It is of the latter assessment, and of the attempt to collect taxes thereon, that the company now complains.

Two questions present themselves, the answers to which determine plaintiff's right to relief: Were the tow-boats and barges chargeable with taxes in Cabell county? If not, can the company obtain relief by this proceeding?

That these items of property were not assessable in that county is clear. They are personal property, as defined by §61, Ch. 29, Code 1906. It says: "The words 'personal property' as used in this chapter shall include all fixtures attached to land if not included in the valuation of such land entered in the proper land book; all things of value, movable and tangible, which are the subjects of ownership; all chattels, real and personal; all money, credits and investments as de-

fined in the following section''.  Section 62 says: ''Investments include stocks, bonds and securities of the United States or of this state, or any other state, nation or government, railroad or other corporation; any share, portion, interest or stock in the capital, joint funds, assets or profits of any company, whether incorporated or not, or in a steamboat or other vessel, or in any adventure, business or undertaking''.  It will be noticed that the last paragraph includes steamboats or other vessels under the head of investments.

Section 63 reads as follows: ''All personal property belonging to persons residing in this state, whether such property be in or out of the state, and all personal property in the state, though owned by persons residing out of the state, shall be entered in the personal property book and be subject to equal and uniform taxation unless specially exempted by law''. Section 64, as amended by Ch. 80, Acts 1907, Ch. 29, Supplemental Code 1909, says: ''Every person required by law to list personal property shall list for taxation the tangible personal property in the magisterial district wherein it is on the first day of April; and he shall list for taxation in the magisterial district in which he resides the money, credits and investments subject to taxation belonging to himself or under his charge or control, whether the same or the evidence thereof be in or out of the state; but capital, money and intangible property, except real estate employed in any trade or business other than agriculture, belonging to a company, whether it be incorporated or not, or to an individual, shall be assessed for taxation in the magisterial district wherein the principal office for the transaction of the financial concerns pertaining to such trade or business is located''.  Section 77, Ch. 29, Supplemental Code 1909, says: ''Each incorporated company having its principal office or chief place of business in this state, except a railroad, * * shall annually, between the first day of the assessment year and the first day of May, make a written report, verified by the oath of the president or chief accounting officer, to the assessor of the county in which its principal office or chief place of business is situated, showing the following items: * * (d)  The amount of credits and investments other than its own capital stock held by it on said date, with their true and actual value''.

It appears to us that these boats and barges owned by the corporation are assessable as investments in Logan county, wherein since 1909 the corporation has kept its principal office. These boats and barges had no fixed situs in Cabell county. They were never located there, but were at the dump or tipple for only a day or so while being loaded for transportation to Sekitan. They had no abiding place in the county of Cabell. Sometimes they were in Ohio, some short times in West Virginia. A corporation has its local habitat at the place where it has its chief office. That is its residence, under these tax statutes. There is the location, in a legal sense, of these boats and barges. We think they were not taxable in Cabell county in 1910.

But our second inquiry must be decided against plaintiff's contention. As held in *Copp* v. *State,* 69 W. Va. 439, "if an assessor assesses land which is not liable for taxes, the party aggrieved has a right to appear before the board of review and equalization and have such erroneous assessment corrected by said board, in the manner provided by §18, Ch. 29, Code 1906, as amended by Ch. 80, Acts 1907. If said board should refuse to make the correction, he can appeal to the circuit court. In the matter of such appeal, the circuit court acts judicially when it decides the question of liability or non-liability of the property to taxation; and the judgment of the circuit court is subject to review, upon a writ of error, by this court, when the taxes levied on such property amount to $100 or more".

That land, and not ptrsonal property, was the matter in litigation in the case cited, is immaterial. Section 129, Acts 1907, relates to real and personal property, and makes the same provision as to both. It and succeeding sections provide a remedy to which any person claiming to be aggrieved by any assessment on any land or property book of any county in the state may and must resort for relief, according to *Bank* v. *Spencer,* 71 W. Va. 678, and *Holley* v. *Land Association,* 71 W. Va. 728. The discussion there is pertinent here, and need not be repeated.

The fact that plaintiff knew it owned, and returned for assessment, in Cabell county in 1910, property other than the tow-boats and barges, and that under §§18, 68, 78, Ch. 80,

Acts 1907, the assessor and the board of review and equaliza-tion had authority to examine and charge its return to include property omitted, or to reduce or increase the values affixed in the report, if either of them became satisfied upon exami-nation or inquiry of such omission or of the insufficiency of such valuation, required the company to ascertain also in what respect, if any, either the assessor or the board changed such return.

Section 68 makes it the imperative duty of the assessor to ascertain, as soon as possible after the first day of the assess-ment year, all personal property subject to taxation in his county, with the value thereof, and the names of the persons to whom the same ought to be assessed, and to make an entry thereof in the proper entry book. As an aid in the discharge of this duty, he might, as perhaps the assessor of Cabell county did, examine the personal property book of the year 1909, where he no doubt found the tow-boats and barges assessed to the plaintiff for that year. We say, "no doubt", because for the year 1909 these items of property were properly chargable with taxes in Cabell county, the company's general office then being in that county. But, having observed the omission of these items from the company's return for 1910, the assessor corrected the list so as to include them, as was his right under §78, if in fact they were properly assessable by him. That he thus changed the list by adding the tow-boats and barges clearly appears from a note on the return: "the last two added by assessor".

But if, by inadvertence or otherwise, the assessor had fail-ed to make any proper change in the property listed by the plaintiff company, the board of review and equalization could have done so, under the authority of §18, Ch. 80, Acts 1907, which required it "to examine and review the land and personal property books, and of its own motion, or on sufficient cause being shown by any person", to "add to said land and personal property books the names of persons, the value of personal property and the description and value of real estate liable to assessment in said county omitted from said assessment books by the assessor"; "to correct all errors in the names of persons, in the description of property upon such books and in the assessment and valuation of property

thereon"; and "to cause to be done whatever else may be necessary to make said assessment as returned by the personal property assessor comply with the provisions of this chapter".

. To the end that all persons, owning taxable property in each county of the state, may have ample notice of the time and place of performing the duties so required, the clerk of the county court, as ex-officio clerk of the board, is required to cause notice to be published once each week for three successive weeks before the meeting of the board, in two newspapers of opposite politics, if there be such in the county; if not, then as otherwise required by §18; and "if any person fail to apply for relief at said meeting he shall be deemed to have waived his right to ask for a correction in the assessment list for the current year, and shall not thereafter be permitted to question the correctness of his list as finally fixed by the board".

Thus, it seems obvious that the legislature intended to provide an exclusive, and at the same time ample, remedy for the correction of erroneous assessments. The notice requires, not by name of course, all persons, firms and corporations owning property assessable in any county of the state to appear before the board, and point out in which respect, if any, the assessment of his or its property is erroneous. If the board should refuse relief, the property owner could, under the section cited, appeal to the circuit court of the county on any question, whether of legality of the assessment or of valuation, and thereafter, if necessary, to this court, upon questions affecting the taxability of any species of property or the legality of any assessment or any other question of a judicial and not merely administrative character. *Copp* v. *State* and other cases cited. Nor does it appear, from any averment of the bill, that plaintiff was not afforded ample notice of the assessment, if indeed notice otherwise than as prescribed by statute is essential, or sufficient opportunity to test its validity before the board of review and equalization, or that any adventitious circumstances prevented resort to the remedy so prescribed.

Failure to pursue the remedy so provided, or to show want of notice or opportunity for resort thereto, or any fraud or other circumstances preventing it, justifies the ruling of the

circuit court upon the defendants' demurrer to the bill. We therefore affirm the decree of July 8, 1911.

*Affirmed.*