In Re: WHEELING STEEL CORPORATION ASSESSMENT
PERSONAL PROPERTY BROOKE COUNTY 1951 TAXES

(No. 10467)

and

IN THE MATTER OF THE ASSESSMENT OF MARINE EQUIPMENT
OF WHEELING STEEL CORPORATION IN OHIO COUNTY

(No. 10461)

Submitted September 23, 1952. Decided December 16, 1952.

654

*Thomas P. O'Brien,* Prosecuting Attorney, *W. F. Keefer, Frank L. Campbell, Thomas A. Goodwin,* Assistant Prosecuting Attorneys, for plaintiff in error in Case No. 10461.

*Schmidt, Hugus & Laas, J. E. Bruce, Harry R. Hesse,* for plaintiff in error in Case No. 10467, and defendant in error in Case No. 10461.

*R. E. Hagberg,* Prosecuting Attorney, for defendant in error in Case No. 10467.

RILEY, PRESIDENT:

Case No. 10461, In Re: Matter of Assessment, Marine

Equipment, Wheeling Steel Corporation, involves a writ of error awarded the Assessor of Ohio County to a judgment of the circuit court of that county; and Case No. 10467, In re: Wheeling Steel Corporation Assessment Personal Property Brooke County 1951 Taxes, involves a writ of error awarded Wheeling Steel Corporation to a judgment of the circuit court of that county, which judgments, respectively, deny to the Assessor of Ohio County the right to tax certain tangible personal property, consisting of various items of marine equipment belonging to Wheeling Steel Corporation, and authorizes the Assessor of Brooke County to tax a substantial part thereof. By order of this Court entered on February 28, 1952, upon the joint motion of the Assessor of Ohio County, the Assessor of Brooke County, and Wheeling Steel Corporation, by their respective attorneys, the two cases, Case No. 10461 and No. 10467, were consolidated, and heard together upon a single printed record, consisting of the proceedings in Brooke County, and pertinent parts of the record of the proceedings in Ohio County, as designated by the parties. On this basis the cases were submitted to this Court on oral arguments and briefs of counsel for the respective interested parties.

Wheeling Steel Corporation, a Delaware corporation, maintaining its principal office in Wilmington, Delaware, and qualified to do business as a foreign corporation in the States of Minnesota, Ohio, Tennessee, Texas and West Virginia, was engaged primarily in the manufacture of iron and steel, steel products, and, incidental thereto and for its own use, the manufacture of coke and the mining of iron ore and coal.

The general business office of Wheeling Steel Corporation is located in Wheeling, Ohio County, where its books and accounting records are kept. There its stockholders' and directors' meetings are regularly held, as authorized by the laws of the State of Delaware; and there the corporation's chairman of the board of directors, president, treasurer, secretary, and chief counsel reside.

The iron ore used in the corporation's blast furnaces in large part is obtained from mines owned or held under long-time leases by other corporations, in which the corporation has an interest, and from a mine in the State of Minnesota, held by the corporation under a long-term lease. The corporation obtains the coal used by it from mines owned by it, or owned or held under long-time leases by Consumers Mining Company, a wholly owned subsidiary, incorporated under the laws of the State of Delaware. Consumers Mining Company operates mines at Martins Ferry, Belmont County, Ohio; and at Barking and Harmarville, Allegheny County, Pennsylvania. The corporation has plants or factories at Steubenville, Mingo Junction, Yorkville, and Martins Ferry, Ohio; at East Steubenville, Follansbee, and Beech Bottom, Brooke County, West Virginia; at Wheeling, Ohio County, West Virginia; and Benwood, Marshall County, West Virginia. The principal manufacturing plants of the corporation are located in the State of Ohio.

As an incident to its business, the corporation transports coal on the Allegheny and Ohio Rivers to some of its plants and its coke ovens at East Steubenville, Brooke County, West Virginia, by certain marine equipment, owned by the corporation, which, on January 1, 1951, consisted of the following:

| | | |
|---|---|---|
| a. | M. S. LaBelle | 1000 H. P. Diesel |
| b. | M. S. Ductillite | 760 H. P. Diesel |
| c. | M. S. Principio | 640 H. P. Diesel |
| d. | 1 Drydock | 219′ x 45′ x 17½′ |
| e. | 1 Derrick Boat | 72′ x 45′ x 12′ |
| f. | 1 Suction Dredge | 80′ x 18′ x 5′ |
| g. | 1 Steel Lumber Barge | 140′ x 26′ x 10′ |
| h. | 1 Steel Fuel Flat Barge | 100′ x 26′ x 8′ |
| i. | 1 Machine and Tool Boat | 100′ x 26′ x 8′ |
| j. | 1 Pump Boat | 60′ x 24′ x 5′ |
| k. | 1 Landing Fleet Float | 104′ x 26′ x 5′ |
| l. | 58 Steel Barges | 210′ x 26′ x 11′ |
| m. | 25 Steel Barges | 140′ x 26′ x 10′ |
| n. | 4 Landing Floats | 100′. x 20′ x 6′ |

On January 1, 1951, the location of the corporation's marine equipment was as follows:

Located at Oakmont mine, Allegheny River, 3 barges;

Located at Harmar mine, Allegheny River, 12 barges;

Located at Pittsburgh harbor, Monongahela River, M. S. "Principio"; pump boat No. 1; 1 landing boat and 7 barges;

Located at Jack's Run harbor, Ohio River, Pittsburgh, 3 barges;

Located at East Steubenville, Brooke County, M. S. "LaBelle"; M. S. "Ductillite"; 1 drydock; 1 derrick boat; 1 suction dredge; marine warehouse; pump boat No. 2; 1 landing float; steel lumber barge No. 255; steel fuel flat barge No. 59; and 40 barges;

Located at Steubenville, Ohio, 1 spar flat;

Located at Mingo Junction, Ohio, 1 barge;

Located at Yorkville, Ohio, 1 spar flat and 2 barges;

Located at Martins Ferry, Ohio, 1 spar flat;

Located at Benwood, Marshall County, 1 spar flat and 3 barges;

Located at Moundsville, Marshall County, 4 barges;

Located at Point Pleasant, Mason County, West Virginia, 2 barges;

Located at Hugheston, Kanawha County, West Virginia, on Kanawha River, 5 barges; and barge No. 503; somewhere on the Ohio or Kanawha River in tow of Ohio River Company's steamer with the Kanawha River as its destination.

The three Diesel motorships: (a.) LaBelle; (b.) Ductillite; and (c.) Principio, were used principally for moving coal from the mines at Barking and Harmarville, Alle-

gheny County, Pennsylvania, on the Allegheny River, to coke ovens owned by the corporation, and located at East Steubenville, Brooke County, West Virginia. Some coal purchased by the corporation from the Berwind-White Coal Company and Johnstown Coal & Coke Company, is transported from Jack's Run harbor in Allegheny County, Pennsylvania, to the corporation's coke ovens at East Steubenville, Brooke County; and some coal purchased from a mine at Moundsville, Marshall County, West Virginia, is transported to Benwood, in Marshall County; and Yorkville, in Jefferson County, Ohio. A small amount of the Moundsville Coal is occasionally transported to the corporation's coke ovens at East Steubenville, Brooke County. No coal or coke, and for that matter, no other product, is transported in the corporation's marine equipment to or from any plant or factory of the corporation in Ohio County. The corporation maintains no harbor or landing float or other marine equipment in that county.

The Diesel motorship, Principio, is used principally for towing empty barges from the corporation's harbor at Pittsburgh, Pennsylvania, to its harbors at the mines at Barking and Harmarville in Pennsylvania; and for moving barges loaded with coal from the harbors at Barking and Harmarville to the corportion's harbor at Pittsburgh. This motorship is regularly tied up over night at the corporation's harbor at Pittsburgh, where the crews are changed. It is used on rare occasions in other operations, none of which consists of transporting any products to or from defendant's plant or factories in Ohio County. If major repairs are needed, the Principio is brought to the East Steubenville harbor in Brooke County.

The Diesel motorships, LaBelle and Ductillite, are used principally in towing empty barges from East Steubenville, Brooke County, to the corporation's harbors at Pittsburgh and Jack's Run, Pennsylvania; and for transporting barges loaded with coal from the Jack's Run and Pittsburgh harbors to the corporation's coke ovens at East Steubenville, Brooke County. These motorships also

transport coal in small amounts purchased from the mine at Moundsville, Marshall County, to the corporation's harbors at Yorkville, Ohio; Benwood, Marshall County, and East Steubenville, Brooke County, West Virginia. On week-ends these two motorships are usually tied up at the harbor at East Steubenville, Brooke County.

The drydock and derrick boat (items d. and e.) are stationed rather permanently at the corporation's harbor at East Steubenville, Brooke County. They are not self-propelled, and only rarely are these items of equipment moved to any other location, though sometimes they have been used for emergency operations, such as raising sunken barges.

The suction dredge (item f.) is used almost solely in the removal of mud and silt from the corporation's harbor at Harmarville, Pennsylvania. Its design is such that it can only be used at a location where high voltage current is available, and where mud and silt can be disposed of suitably. Only when major repairs, normally made every two years, are needed is this dredge towed to the East Steubenville harbor.

The steel lumber barge (item g.) is used as a lumber storage facility at the harbor at East Steubenville, Brooke County. Though it can be moved as other barges are moved, it has remained at East Steubenville harbor since it was first placed there.

The steel flat barge (item h.) is located at the harbor at East Steubenville. On rare occasions it is towed by one of the corporation's motorships and used to transport pipe from the East Steubenville harbor to the Harmarville harbor for use in the dredging operations conducted there.

The machine and tool boat (item i.) has never been moved from the East Steubenville harbor since it was originally located there. It is used for the storage of spare Diesel parts, electrical equipment and for various machine shop operations. The corporation's marine office is permanently located at East Steubenville harbor, as this

equipment is connected from the river bank with water supply and telephone facilities. This equipment is used to furnish electric power derived from shore connections to the motorships LaBelle and Ductillite for the maintenance of heat and refrigeration through connection with outlets on the machine and tool boat, when these motorships are docked at the East Steubenville harbor.

The pump boat (item j.), permanently located at the East Steubenville harbor and never having been moved therefrom since it was originally placed there, is used for pumping water out of the barges and motorships; and by the use of an electric motor-driven capstan, which is a part of its equipment, barges loaded with coal are transferred to the corporation's coal hoist at East Steubenville harbor for the purpose of unloading.

The landing float flat (item k.) is permanently moored to bridge piers by five-inch diameter steel cables and by a steel string approximately one and a half inches in diameter running to a steel cylinder pile sunk in the river bed. This float has an electric motor-driven capstan for moving barges, and has numerous timberheads for tying up the barges. It has never been moved from the East Steubenville harbor since it was first located there.

Seventy-three of the eighty-three steel barges, embraced in items l. and m., are almost exclusively used in the movement of coal from Harmarville, Barking and Jack's run harbors to the harbor at East Steubenville, Brooke County, West Virginia. Normally, the remaining ten barges are used to transport coal from the harbor at Moundsville to the harbors at Benwood, Marshall County, and Yorkville, Jefferson County, Ohio.

The four landing floats embraced in item n. are located at Steubenville and Yorkville, Jefferson County, Ohio, Martins Ferry, Belmont County, Ohio, and Benwood, Marshall County, West Virginia, respectively, where they are used as spare spar floats and for mooring tows at these harbors.

Both the Assessor of Ohio County and the Wheeling

Steel Corporation concede that the following items have a fixed situs for taxation solely in Brooke County, West Virginia:

>Item c.  1 Derrick Boat
>Item d.  1 Drydock
>Item g.  1 Steel Lumber Barge
>Item h.  1 Steel Fuel Flat Barge
>Item i.  1 Machine and Tool Boat
>Item j.  1 Pump Boat
>Item k.  1 Landing Fleet Float

It is conceded that item f., the suction dredge, and item n., the four landing floats, have no physical situs in either Ohio County or Brooke County. There are in controversy in these proceedings only the following items of marine equipment: a. M. S. LaBelle, b. M. S. Ductillite, l. fifty-eight steel barges, m. twenty-five steel barges, a total of eighty-three steel barges. In some parts of this record the number of steel barges is erroneously stated to be eighty-eight and eighty-five.

For a number of years prior to the year 1951, Wheeling Steel Corporation had returned to the Assessor of Brooke County, and that assessor had assessed for taxation as tangible personal property on an *ad valorem* basis, the following marine equipment: 3 M. S. Diesels, LaBelle, Ductillite, and Principio; 1 drydock; 1 derrick boat, 1 suction dredge, miscellaneous marine equipment, which is permanently located at East Steubenville, Brooke County, and items l. and m., consisting of eighty-three steel barges, returned to the Assessor of Brooke County, and assessed by him as "eighty-five steel barges."

Prior to 1951 the Assessor of Ohio County had never attempted to assess any of the marine equipment of Wheeling Steel Corporation, but in that year he advised taxpayer that he intended to assess for taxation the three Diesel motorships and "85" barges. Thereupon, Wheeling Steel Corporation disclosed to both assessors the nature and items of marine equipment owned by it, with the statement that taxpayer had no intention of failing to list

all property for taxation, and to pay taxes thereon in either county, in which it might properly be assessed for taxation.

On the basis of taxpayer's return the Ohio County Assessor assessed the three Diesel motorships, and "88" (83) barges; and the Assessor of Brooke County assessed, as was done in former years, taxpayer's marine equipment as follows: the three Diesel motorships; 85 (83) barges; 1 drydock; 1 derrick boat; 1 suction dredge; and miscellaneous equipment. The Wheeling Steel Corporation made a timely written protest to each assessor, and, pursuant to Code, 11-3, as amended by Article 3, Chapter 41, Acts of the Legislature, Regular Session, 1933, which amendment added Section 24 (a) to said Article 3 (Michie's West Virginia Code, Anno., Chapter 11, Article 3, Section 24 (a) ), requested each assessor to certify to the State Tax Commissioner of West Virginia the question of the taxability of the property taxed and the propriety of each assessment. The assessors of both counties certified the question to the tax commissioner, attaching a statement of facts which had been prepared by counsel for Wheeling Steel Corporation, to which both assessors agreed.

The state tax commissioner ruled that items d., 1 drydock; e. 1 derrick boat; g. 1 steel lumber barge; h. 1 steel fuel flat barge; i. 1 machine and tool boat; j. 1 pump boat; and l. 1 landing fleet float had acquired a permanent situs for the purposes of taxation in Brooke County, on the basis that Wheeling Steel Corporation had maintained "a branch" at East Steubenville in Brooke County, from which marine operations were carried on through use of said items d., e., g., h., i., j., and k.; and the state tax commissioner instructed the Assessor of Brooke County to assess that property. He further ruled that Ohio County had no right to assess any of the items of marine equipment in controversy; and, further, that Brooke County had the right to assess an *ad valorem* tax upon the motorships, LaBelle and Ductillite, and the steel

barges designated as items l. and m., on an apportionment basis, according to an apportionment formula, "which applies the tax to the average number of vessels found to be physically present within the taxing jurisdiction."

Pursuant to Code, 11-3-25, as amended and reenacted by Section 25, Article 3, Chapter 41, Acts of the Legislature, Regular Session, 1933, the Assessor of Ohio County appealed to the Circuit Court of Ohio County from the decision of the state tax commissioner and Wheeling Steel Corporation appealed to the Circuit Court of Brooke County from that decision. The matter was then submitted to the Honorable J. J. P. O'Brien, acting as Judge of the Circuit Court of Ohio County and Judge of the Circuit Court of Brooke County, on an agreed statement of facts, which consisted of the pleadings and the statement of facts previously submitted to the state tax commissioner.

On November 1, 1951, the Circuit Court of Ohio County entered a judgment, affirming the decision of the state tax commissioner, in holding that Ohio County had no right to tax any of the corporation's marine equipment in controversy; and on November 6, 1951, the Circuit Court of Brooke County affirmed in part and reversed. in part the decision of the state tax commissioner, holding that Brooke County had the right to assess the following marine equipment of the Wheeling Steel Corporation: a. M. S. LaBelle; b. M. S. Ductillite; d. 1 Drydock; e. 1 Derrick Boat; f. 1 Suction Dredge; g. 1 Steel Lumber Barge; h. 1 Steel Fuel Flat Barge; i. 1 Machine and Tool Boat; j. 1 Pump Boat; k. 1 Landing Fleet Boat; l. 58 Steel Barges; m. 25 Steel Barges; n. 4 Landing Floats; and o. Miscellaneous.

As heretofore indicated, it is to these orders of the Circuit Court of Ohio County and the Circuit Court of Brooke County, entered on November 1, 1951, and November 6, 1951, respectively, that Carl G. Sailer, Assessor of Ohio County, in Case No. 10461, and Wheeling Steel Corporation, in Case No. 10467, prosecute here their respective writs of error.

On his writ of error to this Court the Assessor of Ohio County claims that only the three Diesel motorships, items a., b., and c., and the 83 steel barges, items l. and m., are taxable in Ohio County; and the Assessor of Brooke County, as defendant in error in both cases, Nos. 10461 and 10467, admits that the following items of taxpayer's marine equipment have acquired a situs for taxation purposes outside of Brooke County: item c., M. S. Diesel Principio; item f., the Suction Dredge; and item n., the 4 Landing Floats.

By order of the Circuit Court of Brooke County, entered on October 22, 1951, a schedule was filed, tendered by Wheeling Steel Corporation, which shows the ton miles transported by the two Diesel motorships, LaBelle and Ductillite, and the eighty-three steel barges for the months of December, 1950, and January, February, March and April, 1951, a five-months period, as follows:

| | | |
|---|---|---|
| Total miles | 119,713,174 | |
| Ton miles transported within the limits of Ohio County | 448,090— | .374% |
| Ton miles transported within the limits of Brooke County | 5,781,251— | 4.830% |
| Ton miles transported on the Ohio River in West Virginia, outside the limits of Ohio and Brooke Counties | 38,108,493—31.833% | |
| and | | |
| Ton miles transported outside of West Virginia | 75,375,340—62.963% | |

Except as to public service corporations under Code, 11-6-13, there is no statutory provision in this State providing for the apportionment of property taxes among the counties of the State and the subdivisions thereof. The two motorships, Ductillite and LaBelle, and the eighty-three barges, if taxable in West Virginia, are, in the absence of the application of an apportionment of the taxes on the theory the marine equipment is being operated in interstate commerce, taxable only in Ohio County

on the basis that Wheeling Steel Corporation, a foreign corporation chartered under the laws of the State of Delaware, has its principal business offices in the City of Wheeling, Ohio County, or only in Brooke County on the theory that they have acquired a taxable situs there independent of the business situs or business domicile of Wheeling Steel Corporation in the City of Wheeling. *Island Creek Fuel Co.* v. *Harshbarger*, 73 W. Va. 397, 80 S. E. 504; *City of Newport News* v. *Commonwealth*, 165 Va. 635, 183 S. E. 514.

The state tax commissioner in his letter of July 30, 1951, ruled on the basis that taxpayer had established a branch in Brooke County, from which operations are carried on, that the following items of marine equipment, being permanently located in Brooke County, had a taxable situs only in that county:

> d. 1 Drydock
> e. 1 Derrick Boat
> g. 1 Steel Lumber Barge
> h. 1 Steel Fuel Flat Barge
> i. 1 Machine and Tool Boat
> j. 1 Pump Boat
> k. 1 Landing Fleet Float;

and that the items:

> a. Motorship LaBelle
> b. Motorship Ductillite
> l. and m. Eighty-three steel barges,

should be taxed on a fair apportionment of the commerce carried on by these items of marine equipment in the State of West Virginia, to that carried on in the other States in which they are operated.

The applicable tax statutes are:

Code, 11-3-12, as amended and reenacted by Chapter 38, Acts of the Legislature, Extraordinary Session, 1933, and Chapter 118, Acts of the Legislature, Regular Session, 1939:

> "Each incorporated company foreign or domestic having its principal office or chief place of business in this State, or owning property subject to taxation in this State, * * * shall annually, * * *

make a written report, * * * to the assessor of the county in which its principal office or chief place of business is situated, showing the following items, viz: * * * (f) the kinds, quantity and true and actual value of all its tangible property in each magisterial district in which it is located."

Code, 11-3-13:

"Upon receiving the verified report required by the preceding section, the assessor, if satisfied with the correctness thereof, shall assess the value of all the property of such corporation liable to taxation, and enter the same as follows, viz.: * * * and all property mentioned in item (f) shall, together with its valuation, be entered in the personal property book of the county, and in the magisterial district wherein such property is on the first day of the assessment year, * * *. If a company have branches, each branch shall be assessed separately in the county and magisterial district where its principal office for transacting its financial concerns is located; or, if there be no such office, then in the magisterial district where its operations are carried on."

Code, 11-5-4, as amended and reenacted by Chapter 40, Acts of the Legislature, Regular Session, 1933:

"Every person required by law to list personal property for taxation shall list the tangible personal property in the magisterial district wherein it is on the first day of the assessment year, * * * but capital, money and intangible property * * * employed in any trade or business * * * belonging to a company, whether it is incorporated or not, or to an individual, shall be assessed for taxation in the magisterial district wherein the principal office for the transaction of the financial concerns pertaining to such trade or business is located; or, if there be no such office, then in the district where the operations are carried on. * * *."

Code, 11-3-13, gives rise to the inquiries: (1) Should the items of marine equipment, the taxable situs of which is in controversy, which were located at various and sundry places on the Ohio River and its tributaries on the

first day of the assessment year 1951, be taxed under Code, 11-3-13, by the taxing units in which the equipment was located; and (2) was the state tax commissioner correct in holding that items d., e., g., h., i., j., and k., had a taxable situs in Brooke County on the basis that taxpayer had a branch in that county.

The answer to the first inquiry seems to be apparent. While taxing statutes should be strictly construed in favor of the taxpayer, *Fairmont Wall Plaster Co.* v. *Nuzum,* 85 W. Va. 667, 102 S. E. 494; *Fidelity & Deposit Co. of Maryland* v. *Lewis County Court,* 123 W. Va. 409, 15 S. E. 2d 302, that construction should not defeat the manifest intent of the Legislature, namely, to obtain by taxation sufficient revenue to operate the governmental units of the State. If we should hold that the two motor Diesel boats and the eighty-three barges should be taxed by the various taxing units along the Ohio River and its tributaries, in which they were located on the first day of the tax year, the equipment, in many instances, would not be taxed by any taxing unit. So the controversy narrows to the question whether the taxable situs in the State of West Virginia is in Brooke County or Ohio County.

The finding of the state tax commissioner that items d., e., g., h., i., j., and k. had a tax situs in Brooke County on the basis that taxpayer maintained a branch there, is, in our opinion, unsound. The pertinent provision of Code, 11-3-13, reads: "* * * If a company have branches, each branch shall be assessed separately in the county and magisterial district where its principal office for transacting its financial concerns is located; * * *." This language does not provide that where a corporate taxpayer has a branch in a county, items of tangible property shall be taxed on that basis in the county in which the branch is located: it simply provides that each branch shall be assessed separately in the county and magisterial district, in this case Clay District, Ohio County, where the corporation's principal office for transacting its financial concerns is located. As these items of tangible property are permanently located in Brooke County, they

have acquired a tax situs there, as distinguished from the tax situs of Wheeling Steel Corporation in the county where it has its principal business office. This principle is so elementary that counsel for Wheeling Steel Corporation and the Assessor of Ohio County concede that the taxable situs of these items is in Brooke County. In *Brock & Co.* v. *Board of Supervisors of Los Angeles County*, 8 Cal. 2d 286, 65 P. 2d 791, 110 A. L. R. 700, the California Supreme Court (In Banc) held that tangible personal property is taxable in the locality where it has established a permanent situs, irrespective of the owner's domicile; and that such property if removed to another tax jurisdiction for temporary purposes only, remains taxable at its permanent situs. The annotation to this case entitled "Situs as between different states or countries of tangible chattels for purposes of property taxation", at pages 707-732, inclusive, is thorough and illuminating and contains an exhaustive collation of authorities.

As between the State of Delaware, the state of taxpayer's corporate creation, and the taxing authorities in the State of West Virginia, the marine equipment, the situs of which is in controversy, has no situs for taxation purposes in the former state. In the case of *Wheeling Steel Corporation* v. *Fox, State Tax Commissioner*, 298 U. S. 193, 80 L. ed. 1143, 56 S. Ct. 773, the Supreme Court of the United States held that on the same showing that we have here the Wheeling Steel Corporation, having established its commercial or business domicile in the State of West Virginia, its intangible property, consisting of bank deposits and accounts receivable for goods made at taxpayer's plant and sold through the sales offices at Wheeling, were taxable only in this State. As the maxim *mobilia sequuntur personam* generally governs the situs of intangible property for purposes of taxation, the holding of the Supreme Court of the United States in *Wheeling Steel Corporation* v. *Fox, etc., supra,* that the domicile of the chief business place of a foreign corporation, as distinguished from the corporation's technical domicile in the state issuing the corporate charter, in which its

principal office is located, determines the tax situs of the corporation's intangible property, applies, *a fortiori,* to the items of marine equipment, the tax situs of which is in controversy, which, as portrayed by this record, have acquired an actual situs in the State of West Virginia.

In the controversy between the assessors of the two counties, the Assessor of Ohio County cites the case of *Island Creek Fuel Co.* v. *Harshbarger, supra,* in which the Court held that under West Virginia Code, 1906, Chapter 29, Section 62, tow boats and barges owned by a coal mining corporation, having its principal place of business in Logan County, and using such boats and barges in the transportation of coal from a point in Cabell County to the market, are assessable with personal property taxes "as investments in the county of its principal office." At the time the *Harshbarger* case was decided, Code, 1906, Chapter 29, Section 62, provided that investments shall "include * * * any share, portion, interest * * * in a steamboat or other vessel." When Chapter 29, Section 62 of the Code of 1906 was incorporated in Chapter 11, Article 5, Section 3, the provision that a share, portion or interest "in a steamboat or other vessel" should be defined as an investment, was deleted. In the *Harshbarger* case, this Court relied on the definition of "investments" contained in the then statute. There being no such provision in Code, 11-5-3, the immediate question before us is whether the motorships, LaBelle and Ductillite, and the eighty-three barges have acquired a tax situs in Brooke County independent of the business situs in Ohio County.

Except for the fact that the chief business office of Wheeling Steel Corporation is located in Ohio County, the assessor of that county has nothing upon which to base an assessment on any of that equipment. On the other hand, the marine equipment has East Steubenville, Brooke County, as its home port. Except for sporadic trips to points on the Ohio River and its tributaries, this equipment is located at East Steubenville, Brooke County, where the crews manning the equipment are employed on a permanent basis, repairs to the equipment made, and

taxpayer's coke ovens serviced by the delivery of coal thereto and the transporting of the coke therefrom. At East Steubenville, Brooke County, there are permanently employed in connection with the servicing, repairing and maintenance of the marine equipment: 1 Diesel maintenance engineer; 2 Diesel repairmen; 1 electrician; 1 drydock superintendent; 3 electric welders; 1 derrick boat operator; 2 barge repairmen; and 1 clerk. On this basis we are of opinion that as between the two counties the two Diesel motorships and the eighty-three barges have a tax situs only in Brooke County.

As the question whether *ad valorem* taxes on the motorships, LaBelle and Ductillite, and the eighty-three barges should be apportioned among the states in which they operated during the tax year of 1951, as suggested in the letter of the state tax commissioner of July 30, 1951, and on the basis of the schedule prepared by Wheeling Steel Corporation and filed in the Circuit Court of Brooke County by order of October 22, 1951, was not decided by either of the two circuit courts, it will not be decided on the instant writs of error. This Court will not consider nonjurisdictional questions not yet acted upon by a circuit court, *Nuzum* v. *Nuzum*, 77 W. Va. 202, 87 S. E. 463; *Bell* v. *Huntington Development & Gas Co.*, 106 W. Va. 155, 145 S. E. 165; and *State* v. *Armstrong*, 134 W. Va. 704, 61 S. E. 2d 537; or constitutional questions, unless raised by an interested party and necessary to a decision of the case. *State* v. *Huber*, 129 W. Va. 198, 40 S. E. 2d 11, 168 A. L. R. 808. But counsel for taxpayer, Wheeling Steel Corporation, have argued this question of apportionment of taxation orally and in their brief, and counsel for both assessors in their briefs concede that there should be some apportionment among the States in which during a taxable year the motorships, LaBelle and Ductillite, and the eighty-three barges have operated.

In our opinion, case No. 10467 should be remanded for the purpose of determining how, if at all, these taxes should be apportioned. In *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, 35 L. ed. 613, 11 S. Ct. 876,

the Supreme Court of the United States held constitutional a Pennsylvania statute imposing an *ad valorem* tax on the capital stock of a railroad company which apportioned the assessment on the basis of the number of miles of railroad over which its cars are run within the state bears to the total number of miles in that and other states over which its cars are run. In that case the Court by way of *dictum* strongly indicated that the rule then applied to railroads should not apply to vessels engaged in commerce between the United States and foreign nations, and those engaged in interstate commerce either in coastwide trade or in transportation along inland waters. However, the Supreme Court of the United States in *Ott* v. *Mississippi Valley Barge Line Co.*, 336 U. S. 169, 93 L. ed. 585, 69 S. Ct. 432, and *Standard Oil Co.* v. *Peck, Commissioner of Ohio*, 98 L. ed. 271, Law ed., Adv. Ops., 1951-1952, ignoring the *dictum* in the *Pullman's Palace Car Company* case, disapproved prior decisions of the Court, governing the taxability of vessels moving in interstate commerce on inland waters, and applied to such vessels the rule, which the Court in the *Pullman's Palace Car Company* case first applied to railroads engaged in the interstate transportation of persons and tangible personal property. Under the holding in the *Ott* and *Standard Oil Company* cases vessels engaged in interstate operations along inland waters were held subject to a state *ad valorem* tax on the same footing as other intrastate enterprises, provided the carrier is engaged in interstate commerce within the taxing state and the tax is fairly apportioned to the commerce carried on within that state to the interstate operations in other states. The decisions in the *Ott* and *Standard Oil Company* cases may, if the question of apportionment comes before this Court, after the remand, require a reappraisal of the case of *Wheeling, Parkersburg & Cincinnati Transportation Co.* v. *City of Wheeling*, 9 W. Va. 170, in which the City of Wheeling was held authorized to assess and levy the whole of an *ad valorem* tax on the value of the taxpayer's boats on the basis that taxpayer's principal and

chief business offices were located there, and the City of Wheeling was the home port of the steamboats.

As the question of apportionment is not now before the Court, we are not at liberty to decide whether the apportionment on a ton mileage basis is violative of Paragraph 3, Section 10, Article I of the Constitution of the United States, which provides: "No State shall, without the Consent of Congress, lay any Duty of Tonnage, * * *."

For the foregoing reasons the judgment of the Circuit Court of Brooke County in Case No. 10467 is reversed in so far as it permits the assessment in Brooke County of item f., the suction dredge, affirmed in so far as it holds valid the assessment of the marine equipment permanently located at East Steubenville in Brooke County, and is remanded to the Circuit Court of Brooke County for the purpose of determining how, if at all, the *ad valorem* taxes on the two motorships, LaBelle and Ductillite, and the eighty-three barges should be apportioned between this state and the other states in which its marine equipment operates in the course of interstate commerce; and the judgment of the Circuit Court of Ohio County in Case No. 10461, wherein it was held that the Assessor of Ohio County had no right to assess any of taxpayer's marine equipment, the taxability of which is in controversy in these proceedings, is affirmed.

> *Judgment of the Circuit Court of Brooke County in Case No. 10467 reversed in part, affirmed in part, and remanded with directions; and the judgment of the Circuit Court of Ohio County in Case No. 10461 affirmed.*