# SOUTHERN PACIFIC CO. *v.* COMMONWEALTH OF KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 247. Argued October 11, 12, 1911.—Decided November 13, 1911.

An artificial situs for purposes of taxation is not acquired by the enrollment of a vessel at a port or the marking of that port on the stern, under §§ 4141 and 4178, Rev. Stat., as amended by the act of June 23, 1874, 18 Stat. 252, c. 467.

The taxable situs of a vessel which has no permanent location within

another jurisdiction is the domicile of the owner. *Ayer & Lord Tie Co.* v. *Kentucky*, 202 U. S. 409, followed, and *Old Dominion Steamship Co.* v. *Virginia*, 198 U. S. 299, distinguished.

A vessel is built to navigate the seas and not to stay in port and it does not acquire a situs in one port rather than another by reason of frequently visiting the former. *Hays* v. *Pacific Mail Steamship Co.*, 17 How. 596.

Although equality of burdens be the general standard sought to be obtained in taxation, the legality of the tax is not to be measured by the benefit received by the taxpayer, nor are protection and taxation necessarily correlative obligations.

The taxing power can only be interfered with on the grounds of unjustness where the abuse is flagrant and can be remedied by some affirmative principle of constitutional law.

A corporation organized under the law of a State and having its general office and holding its corporate meetings therein, receives such protection from that State as affords a basis for taxing its intangible property which has not acquired a situs for taxation elsewhere.

The taxable situs of a vessel not permanently located within another jurisdiction does not depend upon whether the State which is the domicile of the owner possesses a port which such vessel could reach. Such a test would introduce elements of uncertainty dependent upon draft of the vessel and depth of the water.

Vessels engaged in coastwise trade belonging to a Kentucky corporation held to be taxable in Kentucky although enrolled in the port of New York, having the name of New York painted on their sterns and never were at any port in Kentucky.

134 Kentucky, 417, affirmed.

THE facts, which involve the power of the State of Kentucky to tax steamships belonging to a corporation of that State but enrolled at the port of New York, are stated in the opinion.

*Mr. Alexander Pope Humphrey* and *Mr. Maxwell Evarts* for plaintiff in error:

Kentucky is the artificial situs of the ships of the Southern Pacific Company, New York their actual situs. They are therefore not rightfully subject to taxation in Kentucky.

Taxation is imposed by a State in return for protection

given.   Unless a State gives some return for a tax imposed there is no ground for the tax.

To tax personal property where it has no situs is to take property without due process of law, and is prohibited by the Fourteenth Amendment.

As to real estate it was never doubted that the taxing laws of a State could have no extraterritorial force.   It has now come to be settled law that the same is true as to personal property.   *Louisville & Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S. 385; *D., L. & W. R. R. Co.* v. *Pennsylvania,* 198 U. S. 342; *Union Transit Co.* v. *Kentucky,* 199 U. S. 195.

Six cases have been decided by this court in reference to the taxation of ships.   *Hays* v. *Pacific Mail S. S. Co.,* 17 How. 596; *St. Louis* v. *The Ferry Co.,* 11 Wall. 423; *Morgan* v. *Parham,* 16 Wall. 471; *Transportation Co.* v. *Wheeling,* 99 U. S. 273; *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299; *Ayer & Lord Co.* v. *Kentucky,* 202 U. S. 409.

This court having held that the protection given by the taxing sovereignty to the thing taxed is the true basis of taxation, and that this principle should be applied in the case of personal property, as well as to real estate, it is not plain why ships alone of all personal property should be excepted from the rule.

The Court of Appeals of Kentucky declined to hold that the State which furnished protection to the thing taxed alone had the right of taxation, upon the ground that it was prevented from so doing by the decisions of this court in reference to the taxation of ships.

The decisions cited do not so hold.   There is no case decided by this court which holds that a ship in the coastwise trade can be taxed by an inland State within whose jurisdiction it is a physical impossibility for it ever to come.   Further than that, in its later decisions this court has favored the rule of reason and common sense, viz., that ships should not be taxed in the artificial situs

of the domicile of the owner, but in their actual situs—
where they receive the protection of the taxing power.

In every case in this court where the principle that the
domicile of the owner was to be regarded as the situs of
the vessel for the purpose of taxation, it was always a -
domicile where it was physically possible for that ship to
be, and not a domicile where under no circumstances the
taxing power could have the ship within its jurisdiction.

The question is: Are these ships to be taxed in a State
which does, and can give them, no protection or in a State
which can and does do so—in a State where the fiction of
the law as to personalty following the owner's domicile
must be extended to an extreme, or in one where they have
an actual situs, so far as possible for ships engaged in
coastwise trade to have a situs, and pay a tax to that State
which does something for them in return?

Mr. Matt J. Holt, with whom Mr. Joseph Selligman
was on the brief, for defendant in error.

MR. JUSTICE LURTON delivered the opinion of the court.

The question arising upon this writ of error is, whether
certain steamships owned by the Southern Pacific Com-
pany, a corporation of the State of Kentucky, are taxable
in Kentucky as property having a taxable situs there.

The Southern Pacific Company is a corporation organ-
ized under a special act of the General Assembly of Ken-
tucky of March 17, 1884. Acts of 1883–4, p. 725. Very
wide and diverse powers are thereby conferred, among
them being the right to own, lease, maintain and operate
railroads, telegraphs and steamships, though prohibited
from owning, leasing or operating "any railroad within the
State of Kentucky." By an act of March 21, 1888, the act
of March 17, 1884, was amended by adding thereto the
following: "Except subject to and in conformity with the
provisions of the laws of the State of Kentucky applicable

to railroads, and acquiring no special rights that may be possessed by any railroads in the State, except the general and ordinary rights of common carriers as possessed by railroads generally." The company is required to keep its principal office in the State, with power to open other offices at places outside of the State, as its business may make convenient.

By virtue of the authority conferred the company has acquired and is operating a line of railway from New Orleans and Galveston to San Francisco and Portland, to say nothing of connecting lines in the same region either owned, leased or controlled through stock domination. It also owns and operates a line of twenty steamships between the ports of New York and New Orleans, New York and Galveston, and New Orleans and Havana, Cuba. Auxiliary to these ships it also owns barges, tugs and ferryboats, which operate exclusively in the harbors of the ports mentioned. These tugs, barges, etc., were held to have acquired a permanent situs in such ports, under the ruling in *Old Dominion Steamship Co.* v. *Virginia,* 198 U. S. 299, and in this the State of Kentucky acquiesced, leaving open only the question of the taxable situs of the ocean-going steamships.

All of these ships are enrolled at the port of New York and carry on their sterns the words "New York," as required by the statute. Two of them sail between New Orleans and Havana, five between New York and New Orleans exclusively, and thirteen interchangeably between New York and New Orleans, and New York and Galveston, Texas. The enrollment at New York and the marking of the name of that port upon the stern of these vessels is only of importance upon the question of an actual situs at New York. The owner has no power to give his vessel a taxable situs by the arbitrary selection of a home port, which is neither his domicile, nor the domicile of actual situs. *St. Louis* v. *Ferry Co.,* 11 Wall. 423;

*Old Dominion Steamship Co.* v. *Virginia,* 198 U. S. 299; *Ayer & Lord Tie Co.* v. *Kentucky,* 202 U. S. 409.

Sections 4141 and 4178, Revised Statutes, as amended by the act of June 23, 1874, 18 Stat. 252, c. 467, give to an owner the right to mark upon the stern of his vessel either the name of the place of enrollment, the place where the vessel was built, or the place where the owner resides.

As the place of enrollment is not of itself determinative of the place of taxation, it is obvious that the right to select a place to be marked upon the stern as a place of hail or home port, does not confer the arbitrary right upon the owner of selecting a place for the taxation of his vessel. To give to the statute this construction, said this court in *Ayer & Lord Tie Co.* v. *Kentucky,* cited above (p. 426), "would be simply to hold that its purpose was to endow the owner with the faculty of arbitrarily selecting a place for the taxation of his vessel in defiance of the law of domicile and in disregard of the principle of actual situs."

Since, therefore, an artificial situs for purposes of taxation is not acquired by enrollment nor by the marking of a name upon the stern, the taxable situs must be that of the domicile of the owner, since that is the situs assigned to tangibles where an actual situs has not been acquired elsewhere. The ancient maxim which assigns to tangibles, as well as intangibles, the situs of the owner for purposes of taxation has its foundation in the protection which the owner receives from the government of his residence, and the exception to the principle is based upon the theory that if the owner, by his own act, gives to such property a permanent location elsewhere, the situs of the domicile must yield to the actual situs and resulting dominion of another government. Thus in *St. Louis* v. *Ferry Co.,* 11 Wallace, 423, 430, this court, after referring to the taxing power of a State as extending to all persons and property within its territorial jurisdiction, said:

"In the eye of the law personal property, for most purposes, has no locality. . . . In a qualified sense it accompanies the owner wherever he goes, and he may deal with it and dispose of it according to the law of his domicile. If he die intestate, that law, wheresoever the property may be situate, governs its disposal, and fixes the rights and shares of the several distributees.   But this doctrine is not allowed to stand in the way of the taxing power in the locality where the property has its actual *situs*, and the requisite legislative jurisdiction exists.   Such property is undoubtedly liable to taxation there in all respects as if the proprietor were a resident of the same locality.   The personal property of a resident at the place of his residence is liable to taxation, although he has no intention to become domiciled there.   Whether the personal property of a resident of one state situate in another can be taxed in the former, is a question which in this case we are not called upon to decide."

The question thus reserved was decided adversely to the State of domicile in *Union Transit Co.* v. *Kentucky,* 199 U. S. 194.

The persistence with which this court has declared and enforced the rule of taxability at the domicile of the owner of vessel property, when it did not appear that the vessels had an actual situs elsewhere, is illustrated by the cases of *Hays* v. *Pacific Mail Steamship Company,* 17 Howard, 596; *Morgan* v. *Parham,* 16 Wallace, 471; *St. Louis* v. *Ferry Co.,* 11 Wallace, 423; *Old Dominion Steamship Co.* v. *Virginia,* 198 U. S. 299, and the case of *Ayer & Lord Tie Co.* v. *Kentucky,* 202 U. S. 409.

In *Hays* v. *Pacific Mail Steamship Company* it appeared that the ships of the company were the property of a New York corporation, and that they were registered at the port of New York, where the capital represented by them was assessed for taxation.   They were regularly and continuously employed on the Pacific coast, and were re-

fitted and repaired from time to time at Benicia, in the State of California. Concerning these ships, which the State of California sought to tax upon the theory that they had an actual situs in that State, this court said (p. 598):

"These ships are engaged in the transportation of passengers, merchandise, &c., between the city of New York and San Francisco, by the way of Panama, and between San Francisco and different ports in the territory of Oregon. They are thus engaged in the business and commerce of the country, upon the highway of nations, touching at such ports and places as these great interests demand, and which hold out to the owners sufficient inducements by the profits realized or expected to be realized. And so far as respects the ports and harbors within the United States, they are entered and cargoes discharged or laden on board, independently of any control over them, except as it respects such municipal and sanitary regulations of the local authorities as are not inconsistent with the Constitution and laws of the General Government, to which belongs the regulation of commerce with foreign nations and between the States.

"Now, it is quite apparent that if the State of California possessed the authority to impose the tax in question, any other State in the Union, into the ports of which the vessels entered in the prosecution of their trade and business, might also impose a like tax. It may be that the course of trade or other circumstances might not occasion as great a delay in other ports on the Pacific as at the port of San Francisco. But this is a matter accidental, depending upon the amount of business to be transacted at the particular port, the nature of it, necessary repairs, &c., which in no respect can affect the question as to the *situs* of the property, in view of the right of taxation by the State.

"Besides, whether the vessel, leaving her home port for trade and commerce, visits, in the course of her voyage

or business, several ports, or confines her operations in the carrying trade to one, are questions that will depend upon the profitable returns of the business, and will furnish no more evidence that she has become a part of the personal property within the State, and liable to taxation at one port than at the others. She is within the jurisdiction of all or any one of them, temporarily, and for a purpose wholly excluding the idea of permanently abiding in the State, or changing her home port."

In *St. Louis* v. *Ferry Co.*, cited above, the steamboats in question were owned by an Illinois corporation, which had its principal office within that State. They were enrolled at the port of St. Louis, where the principal officers of the company resided, and where an office was maintained, in which the corporate meetings were held and where the corporate seal was kept. That they were enrolled at St. Louis, the court said, "throws no light upon the subject of our inquiry. . . . The solution of the question, where her home port is, when it arises, depends wholly upon the locality of her owner's residence, and not upon the place of her enrollment." The steamers were taxed in Illinois, and were held not subject to taxation in St. Louis. Upon this subject the court said (p. 431):

"The owner was, in the eye of the law, a citizen of that State, and from the inherent law of its nature could not emigrate or become a citizen elsewhere. As the boats were laid up on the Illinois shore when not in use, and the pilots and engineers who ran them lived there, that locality, under the circumstances, must be taken to be their home port. They did not so abide within the city as to become incorporated with and form a part of its personal property. Hence they were beyond the jurisdiction of the authorities by which the taxes were assessed, and the validity of the taxes cannot be maintained."

In *Morgan* v. *Parham*, the vessel was owned and registered in New York, but enrolled as a coaster at Mobile,

where her master resided and where there was an office and agent under the control of a superior agent residing at New Orleans, who employed and paid the other officers and men of the ships. There was also a wharf at Mobile controlled and occupied by the vessels of the line. The vessels were engaged in commerce between Mobile and New Orleans and had been so continuously for several years. The court held that "the State of Alabama had no jurisdiction over the vessels for the purpose of taxation, for the reason that they had not become incorporated into the personal property of that State, but were there temporarily only, and that they were engaged in lawful commerce between the States with their situs at the home port of New York, where they belonged and where their owners were liable to be taxed for their value.

The case of *The Old Dominion Steamship Company* v. *Virginia*, affords an instance of where the domicile of the owner as a taxing situs was held to have been lost and a new taxing situs acquired by reason of a permanent location within another jurisdiction. But in that case the judgment was rested upon the fact that the vessels had for years been continuously and exclusively engaged in the navigation of the Virginia waters, which State had thereby acquired jurisdiction for imposing a tax as upon property which had become incorporated into the tangible property within her territory.

Coming now to the last utterance of this court, the case of *Ayer & Lord Tie Company* v. *Kentucky*, we find a complete authority for upholding the assessability of these steamers by the State of Kentucky. The boats there in question were engaged in interstate commerce between the ports of Kentucky, Illinois, Mississippi, Tennessee and Arkansas. They were owned by an Illinois corporation which had its principal office at Chicago, where taxes had been paid under the laws of the State, both to the State and to the city. Brookfield, in the extreme south-

ern part of the State, and upon the Ohio river, was a port of call, and an office was probably maintained there, it being a place where cargoes were often discharged. The general manager of the transportation department of the company resided in Kentucky and the boats of the fleet were enrolled at Paducah in that State, and bore upon their sterns the name "Paducah," as the home port or port of hail under the statute. Paducah was the place where the boats received their supplies and repairs, where seamen were hired and laid up when not in use, though it seems that Paducah was not a point where cargo was either received or discharged. Upon this state of facts it was held that the boats of the company had neither such artificial situs through enrollment or the marking upon their sterns, nor such actual situs by reason of the temporary stoppage at Paducah and other ports of the State, as to draw to it jurisdiction for purposes of taxation. The result of the previous decisions was there summed up, the court saying (p. 421):

"The general rule has long been settled as to vessels plying between the ports of different States, engaged in the coastwise trade, that the domicil of the owner is the situs of a vessel for the purpose of taxation, wholly irrespective of the place of enrollment, subject, however, to the exception that where a vessel engaged in interstate commerce has acquired an actual situs in a State other than the place of the domicil of the owner, it may there be taxed because within the jurisdiction of the taxing authority."

It has been urged that the case of *Union Transit Co.* v. *Kentucky,* 199 U. S. 194, lays down the principle that jurisdiction to impose taxes upon tangible property is, under the Fourteenth Amendment, wholly dependent upon the actual situs of the property taxed, and that the fiction which gives movables the situs of the owner for purposes of taxation is inconsistent with that due process of

law guaranteed under that Amendment. The question for decision in that case, as stated in the forepart of the opinion (p. 201), was, "whether a corporation organized under the laws of Kentucky is subject to taxation upon its tangible personal property, *permanently located in other States* and employed there in the prosecution of its business." The property in question was railroad cars, a kind of movables obviously capable of acquiring a permanent location other than that of the owner. The judgment of the court was that the taxation of such property so *permanently located* elsewhere by the law of the domicile of the owner would be a denial of due process of law and beyond the power of the State. The principle was not a new one, and was declared to rest upon repeated judgments of this court, the cases of *Railroad Co.* v. *Jackson,* 7 Wallace, 262; *Delaware &c. Railroad* v. *Pennsylvania,* 198 U. S. 341; *Louisville &c. Ferry Co.* v. *Kentucky,* 188 U. S. 385, being cited as precedents. That judgment did not deny to the State of the domicile of the owner power to tax tangibles which had not acquired an actual situs elsewhere.

The case presented no such question and the opinion does not refer to the numerous cases holding that the taxable situs of ships engaged in foreign or interstate commerce was that of the owner unless an actual situs had been elsewhere acquired. That no such consequence was attached to the judgment or opinion is evidenced from the opinion in *Ayer & Lord Tie Company* v. *Kentucky,* announced at the same term and concurred in by Mr. Justice Brown, who wrote the opinion in the Transit Company case, in which case it was distinctly affirmed that vessels were subject to taxation only at the domicile of the owner, unless they had acquired an actual situs in another jurisdiction.

To lay down a principle that vessel property has no situs for purposes of taxation other than that of actual permanent location, would introduce elements of uncertainty

concerning the situs of such property not presented by other kinds of movable property.

It is one thing to find that a movable, such as a railway car, a stock of merchandise, or a herd of cattle, has become a part of the permanent mass of property in a particular State, and quite another to attribute to a sea-going ship an actual situs at any particular port into which it goes for supplies or repairs or for the purpose of taking on or discharging cargo or passengers. A ship is not intended to stay in port, but to navigate the seas. Its stay in port is a mere incident of its voyage, and to determine that it has acquired an actual situs in one port rather than another would involve such grave uncertainty as to result often in an entire escape from taxation. This court, in *Hays* v. *Pacific Mail Steamship Co.*, *supra*, said upon this subject (p. 599), "whether the vessel, leaving her home port for trade and commerce, visits, in the course of her voyage or business, several ports, or confines her operations in the carrying trade to one, are questions that will depend upon the profitable returns of the business, and will furnish no more evidence that she has become a part of the personal property within the State, and liable to taxation at one port than at the others. She is within the jurisdiction of all or any one of them temporarily, and for a purpose wholly excluding the idea of permanently abiding in the State, or changing her home port."

In *People ex rel. Pacific Mail Steamship Company* v. *Commissioners of Taxes*, 58 N. Y. 242, 246, the New York court said, concerning the necessity of determining the taxable situs of such ships by some more certain standard than by the ports they make and the time they remain, that, "being in port is only a necessary incident in their proper employment. They are not built to be in port, but upon the sea. To determine their *situs*, for purposes of taxation, by their longer or shorter stay in a particular port, or by their more or less frequent resort to it, would intro-

duce perpetual uncertainty; it would, practically, subject them to taxation in every port, or exempt them in all."

The difficulties attendant upon the taxation of intangible property elsewhere than at the domicile of the owner have largely preserved the domicile of the owner as the proper situs for purposes of taxation.

The legality of a tax is not to be measured by the benefit received by the taxpayer, although equality of burdens be the general standard sought to be attained. Protection and taxation are not necessarily correlative obligations, nor precise equality of burden attainable, however desirable. The taxing power is one which may be interfered with upon grounds of unjustness only when there has been such flagrant abuse as may be remedied by some affirmative principle of constitutional law.

Take the case in hand. The Southern Pacific Company is a corporation having much extraordinary power. It only exists and exercises this power by virtue of the law of Kentucky. By the law of its being it resides in Kentucky and there maintains its general office and there holds its corporate meetings. To say that the protection which the corporation receives from the State of its origin and domicile affords no basis for imposing taxes upon tangibles which have not acquired an actual situs under some other jurisdiction is not supportable upon grounds of either abstract justice or concrete law. What is the protection accorded these vessels at any of the ports to which they temporarily go for purposes of business? What protection do they receive from the State or city of New York other than that accorded to every other ship which visits that port, foreign or domestic, for repairs, supplies or other business? Referring to a like claim of protection this court, in *Hays* v. *Pacific Mail Steamship Co.*, 17 Howard, 596, 599, said: "And so far as respects the ports and harbors within the United States, they are entered and cargoes discharged or laden on board, independently of

any control over them, except as it respects such municipal and sanitary regulations of the local authorities as are not inconsistent with the Constitution and laws of the General Government, to which belongs the regulation of commerce with foreign nations and between the States."

It has also been urged that the situs of the domicile of the owner of a ship cannot be the situs for purposes of taxation when it appears that the ship cannot go to that situs; and it is here said that the ships of the Southern Pacific Company cannot visit any port in the State of Kentucky. The fact is not shown, nor is it conceded. The State has a port on the Mississippi, a great stream, up which national ships of war have at times gone as high or higher than the southern boundary of the State of Kentucky. But the test proposed is not one for which there is any authority, and would but introduce another grave element of uncertainty dependent upon the draught of the ships and the depth of the water. Such a test might exclude from taxation ships, such great ships as the Olympic, or the Lusitania, while smaller craft might meet the proposed standard.

The facts which have been relied upon to show an actual situs of these ships in the port of New York have been already sufficiently stated. They fall short of the facts relied upon for a like purpose in *Hays* v. *Pacific Mail Steamship Company; St. Louis* v. *Ferry Co.,* and *Morgan* v. *Parham,* already cited, where the judgments were that they were insufficient to create a taxable situs other than that of the owner. The facts shown by no means bring the case under the authority of *Old Dominion Steamship Company* v. *Virginia,* where it was held that the ships had acquired an actual situs.

We find no reason for disturbing the judgment of the Court of Appeals of the Commonwealth of Kentucky, and it is therefore,

*Affirmed.*