# Richmond

## CITY OF NEWPORT NEWS AND CHESAPEAKE FERRY COMPANY V. COMMONWEALTH OF VIRGINIA.

January 16, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Charles L. Kaufman* and *S. R. Buxton,* for the appellants.

*John N. Sebrell* and *Jonathan W. Old, Jr.*, for the appellee.

GREGORY, J., delivered the opinion of the court.

The Honorable Thos. W. Ozlin, Chairman of the State Corporation Commission, prepared and filed an opinion in this case which, in our judgment, correctly decides it. We adopt that opinion as the opinion of the court. It is as follows:

"The applicant, the Chesapeake Ferry Company, a corporation duly organized and existing under the laws of the State of Virginia, with its principal office in the city of Norfolk, Virginia, filed its application in pursuance of, and in accordance with, the provisions of section 235 of the Tax Code of Virginia (see Code 1930, Appendix, page 2201), for a review and correction of the assessment made by the State Corporation Commission on six steamers or ferry boats and one coal barge owned and operated by the applicant.

"The grounds of the complaint on which the review and correction is sought is that, on the 1st day of January, 1934, all of the said steamers or ferry boats were situated in the city of Newport News, Virginia, instead of the city of Norfolk, Virginia, to which last named city the Commission had assessed them for taxation for the year 1934, and that, therefore, the situs of said property for the purpose of taxation for the year ending December 31, 1934, should have been determined by the State Corporation Commission to be in the city of Newport News, instead of Norfolk. Therefore, the only question involved is as to the correct situs of said property for taxation for the year 1934, and no question of the amount of said assessment is here involved.

"Only one witness testified, and one exhibit was filed. The evidence shows that the applicant is a Virginia corporation, whose principal office, in accordance with its charter, is in the city of Norfolk, Virginia; that the com-

pany is engaged in the operation of ferry boats between the cities of Norfolk and Newport News, Virginia, and between Norfolk and Old Point Comfort, Virginia; that the company maintains its principal office in the city of Norfolk, at which all accounting work in connection with its business is done; all of the steamers were enrolled on January 1, 1934, and, as previously, from the organization of the company, in the custom house in the city of Norfolk; that certain of the steamers are constantly used on the two routes, and the other steamers owned by the applicant are kept as reserve or surplus equipment; that the amount of revenue derived from Newport News and that derived from Norfolk, on the Norfolk-Newport News line, are practically the same; that the applicant maintains an office located in the city of Newport News, for the handling of matters relating to the operation of the company's vessels, and, at this latter office, the members of the crew and officers of the vessels are employed, and purchases of supplies, equipment, stores, provisions and parts are made through the Newport News office; that certain repairs to the boats are made at Newport News, and that other repairs are made at Norfolk; that the boats in active service spend some time each year at Newport News, undergoing repairs, and that the applicant also has at Newport News lay docks, where vessels not in use are tied up; that the company also has an extra slip at Willoughby Spit (Norfolk), where a steamer not in use is sometimes tied up; the company has a machine shop at Newport News, in which is kept machinery and tools necessary for making certain repairs to the vessels, also buildings in which extra parts, supplies, and stores are kept.

"The evidence further shows that the vessels in use are tied up at night, both at Norfolk and Newport News, and that the vessels not in use, but held in reserve, are tied up both on the Norfolk side and at Newport News, and that certain of the vessels spend considerably more time at Newport News than on the Norfolk side. The amount of time spent by the different vessels on the two sides of

Hampton Roads is shown in considerable detail by the evidence, not deemed necessary to be set out here.

"The barge used for servicing the vessels in use is used almost exclusively on the Newport News side, and rarely, if ever, goes to Norfolk, being originally kept for the purpose of coaling the steamers, but now used as a lumber yard, and for the storage of repair parts for the steamers.

"As stated above, the question for decision is the situs of the vessels for the purpose of taxation for the year 1934. The applicant contended: (1) that all of said vessels should be assessed to Newport News; and (2) that they should be assessed part to Newport News and part to Norfolk, according to the amount of time spent by each vessel at Newport News or Norfolk.

"The applicant bases its whole contention on the provisions of sections 425 and 221 of the Tax Code (see Code 1930, Appendix, pages 2195, 2249). It contends further that the domicile of the owner does not determine the location of the vessels for the purpose of taxation; and that, by the Virginia statutes, the doctrine of *mobilia sequuntur personam,* which obtained at common law, has been definitely abolished in Virginia, and that the statutes are wholly controlling.

"The pertinent part of section 425 of the Tax Code reads as follows:

" 'TAXABLE SITUS OF PERSONAL PROPERTY GENERALLY.— * * * The situs for the assessment and taxation of tangible personal property, merchant's capital, and machinery and tools, shall in all cases be the county, district, or city in which such property may be physically located on the first day of the tax year. * * *.'

"The relevant portion of section 221 of the Tax Code is as follows:

" 'Each and every corporation which operates steamships, steamboats, or other floating property for the transportation of passengers or freight, shall report annually, on or before the first day of May, to the State Corporation Commission, all of its real and personal property of every

description in this State belonging to it as of the beginning of the first day of January preceding, showing particularly in what city, town, and school district the property is located, and classifying the same under the following heads:

" 'First. All steamships, steamboats, and other floating property, and machinery and equipments.

" 'Second. All wharves, sheds, offices, stores, docks, machine shops, granaries, elevators, and other buildings.

" 'Third. All real estate and personal property not included in the foregoing classification.'

"The section further requires that the corporation shall give in its report the total number of miles operated within and without the State for the preceding year; the gross receipts from operations entirely within the State, and, if partly within and partly without the State, the entire gross receipts from operations for the preceding year; and any and all other information which the State Corporation Commission shall require; the Corporation Commission shall, after giving thirty days notice to the company, value the property of such corporations; and, if the company fails to make the report required, the Commission may, at such time as it may elect, and upon the best information obtainable assess the value of the property, and the taxes imposed thereon by law; any such corporation failing to pay the taxes within the time prescribed, shall incur a penalty of five per cent; a certified copy of the assessment shall be immediately forwarded by the clerk of the Commission to the proper officer of the corporation; and the section closes with this language:

" 'It shall be the duty of the clerk of the State Corporation Commission to furnish to the council of every city and town, and to the board of supervisors of every county wherein the property belonging to said corporation is situated, a certified copy of the assessment made by the State Corporation Commission of such corporation's property, which assessment shall definitely show the character of the property, its value and location for the purpose of taxation in each city, town, county and district, so that

city, town, county and district levies may be imposed upon the same.'

"The applicant strongly contends and insists that the physical location on the first moment or day of the tax year is the determining question as to the situs of such property for the purpose of taxation, and undertakes to show the exact location of each of the vessels owned by the applicant on the first moment or day of the tax year. It is admitted that, if the common law rule still applies in Virginia to floating equipment, all of said vessels should be assessed for taxation in the city of Norfolk—the domicile of the owner—but bases its whole argument on the contention that the physical location is the controlling factor.

"It should be said that the Virginia statute lays down no rule for determining the situs of floating property. The applicant concedes, and indeed the authorities amply support the view, that, as to vessels plying in interstate commerce, the domicile of the owner determines the situs for the purpose of taxation, but the applicant contends that the numerous cases supporting this view have no application to vessels plying entirely between different tax districts within the same State, and that the statute has definitely and irrevocably fixed the physical location on the first day of the tax year as the situs.

"The Commission is of the opinion that this contention is not sound, and that, since the Virginia statute does not undertake to define the situs of floating property for the purpose of taxation, the common law rule of *mobilia sequuntur personam* still applies as to such property. Any other rule would result in confusion, and possibly in many cases in the escaping of taxation altogether, because it is entirely possible that such floating property on the first day of the tax year would not be within the jurisdiction of either taxing unit within the State, but would be on the seas.

"The United States statutes require that vessels be registered or enrolled at the nearest port to the home office

of the company, but the place of enrollment or registration is not a controlling factor in determining the situs for taxation, though it is a factor to be considered. *Norfolk & W. Ry. Co.* v. *Board of Public Works,* 97 Va. 23, 32 S. E. 779.

"The Commission is further of the opinion that the physical location of property as contemplated in the Virginia statutes means that property must have acquired a degree of permanency or to have become a part of the common mass of property in the taxing district, and that this is practically impossible in the case of floating property, such as is here involved. It is not the purpose of such property, nor is it contemplated, that it shall remain in one place. From its very nature and purpose, it is intended to go from place to place, and its location in any port for the purpose of taking on and discharging passengers and cargo, or for the purpose of repairs, is merely incidental, and is not sufficient to establish a permanent situs at such ports or places of call. The Commission is of opinion that the same rule applying to vessels engaged in interstate commerce, to-wit, that the domicile of the owner determines the situs for taxation, controls in the case of such property plying between the ports of different taxing units within the same State.

Mr. Justice Lurton, in *Southern Pac. Co.* v. *Commonwealth of Kentucky,* 222 U. S. 63, 74, 32 S. Ct. 13, 17, 56 L. Ed. 96, said:

" 'To lay down a principle that vessel property has no situs for purposes of taxation other than that of actual permanent location, would introduce elements of uncertainty concerning the situs of such property not presented by other kinds of movable property.'

"We are unable to find any controlling reason for concluding why certain facts would be insufficient to establish a permanent situs for a ship between two ports in different states, while the same facts would be sufficient to establish a situs of a ship plying between ports in the same state. The principles to be applied in determining

the actual situs of a ship are necessarily the same in both cases.

"In 2 Cooley, Taxation (4th Ed.) section 453, Judge Cooley says:

"'Where the question as to place of taxation of ships arises as between two or more places in the same State, the matter is often governed by express statutory provisions. If there is no such statute, then the rule already stated as to the domicile of the owner and the actual situs of the ship is controlling.'

"The Virginia statute does not provide any standard or rule to determine the situs. It simply provides for the taxation at the situs. Therefore, cases, whether dealing with vessels plying interstate, or wholly intrastate, which decide what facts do or do not establish situs, are pertinent and applicable.

"The applicant, to establish situs at Newport News, relies largely upon the fact that some of the boats are in Newport News for a longer time during the year than they are in Norfolk, that minor repairs are made at Newport News; that certain supplies are furnished there; and that, when not in actual use, the boats are tied up at Newport News for more of the time than at Norfolk; that the hiring of men and the keeping of certain stores at Newport News has a material bearing. However, the evidence reveals that every element of physical presence pertaining to Newport News also pertains in more or less degree to the city of Norfolk, the home of the company.

"Similar facts have been urged as establishing taxable situs in many cases, but not a single case has been called to our attention where such facts have been held to be sufficient to establish taxable situs, but, on the contrary, the cases have held that such facts do not establish taxable situs. Quoting further from 2 Cooley, Taxation (4th Ed.) section 453:

"'On the other hand, if a vessel is engaged in traffic between the ports of two or more States, more or less continuously, it would seem that it can acquire no actual

situs in any of such ports, other than the home port, *i. e.,* the domicile of the owner. As was said by the Supreme Court of the United States:

" 'It is one thing that a movable, such as a railway car, a stock of merchandise, or a herd of cattle, has become a part of the permanent mass of property in a particular State, and quite another to attribute to a seagoing ship an actual situs in any particular port into which it goes for supplies or repairs, or for the purpose of taking on or discharging cargo or passengers. A ship is not intended to stay in port, but to navigate at sea. Its stay in port is a mere incident of its voyage, and to determine that it has acquired an actual situs in one port rather than another, would involve such grave uncertainty as to result often in an entire escape from taxation.'

"The foregoing quotation by Judge Cooley was from the Supreme Court of the United States in the case of *Southern Pac. Co.* v. *Commonwealth of Kentucky,* 222 U. S. 63, 32 S. Ct. 13, 56 L. Ed. 96, where the Southern Pacific Company, a Kentucky corporation, operated twenty steamships between various ports, none of which ever went into Kentucky, and the court held that, by the very character of the service rendered, and the nature of the ships, and their intended purpose, they could acquire no actual situs, either by the length of time or by their stay in one port longer than another, and that they were taxable in Kentucky, the place of the company's domicile. The contention of the applicant that the stay of certain boats for a longer time in Newport News than in Norfolk fixes their situs for taxation at Newport News, is answered by the court in that case, which requires the placing of taxable situs on some more certain standard than length of stay at the ports at which they call. Quoting again:

" 'Being in port is only a necessary incident in their proper employment. They are not built to be in port, but upon the sea. To determine their situs for purposes of taxation by their longer or shorter stay in a particular port, or by their more or less frequent resort to it, would

introduce perpetual uncertainty; it would practically subject them to taxation in every port, or exempt them in all.'

"In support of our conclusion that, for floating property of the kind here in question, the domicile of the owner is the controlling factor in determining the situs for taxation, we will refer to a few more cases dealing with the subject.

"In *Ayer & Lord Tire Co.* v. *Commonwealth of Kentucky*, 202 U. S. 409, 26 S. Ct. 679, 50 L. Ed. 1082, 6 Ann. Cas. 205, the owner of the vessels was an Illinois corporation. The vessels were enrolled at Paducah, in Kentucky; when not in use, they were kept in Paducah, and the port of Paducah is and was on each of said days the home port of said vessels. There they received supplies, and there seamen were hired. It was held that these facts were not sufficient to establish situs for taxation.

"In *Morgan* v. *Parham*, 16 Wall. 471, 21 L. Ed. 303, the vessel was owned and registered in New York by enrollment as a coaster at Mobile. Her master resided at Mobile, and his office was there, and an agent under the control of a superior agent at New Orleans, who employed and paid the other officers and men of the ship. There was a wharf at Mobile. Vessels were engaged in commerce between Mobile and New Orleans, and had been so continuously for several years. The court held that the State of Alabama had no jurisdiction over the vessels for the purpose of taxation, for the reason that they had not become incorporated into the personal property of that State, but were there temporarily only, and that they were engaged in lawful commerce between the States, and their situs was at the home port of New York, where they belonged, and where their owners were liable to be taxed for their value. See also, *Hooper* v. *Mayor, etc., of Baltimore*, 12 Md. 464; *Atlantic Maritime Co.* v. *City of Gloucester*, 228 Mass. 519, 117 N. E. 924.

"In *Yost* v. *Lake Erie Transp. Co.*, 112 Fed. 746, 751, 50 C. C. A. 511, the vessels were owned by a Michigan

corporation, the home port being Monroe, and the point of registration being Detroit, both within the State of Michigan. They plied in interstate commerce between Toledo, Ohio, and the ports of other States on Lake Erie. A majority of the directors and officers resided in Toledo, in Ohio, where the general manager had his office, where the vessels commonly wintered, and where the officers and crew were employed and discharged. In a well considered opinion by Judge Lurton (later Mr. Justice Lurton), it was held that the State of Ohio had no jurisdiction for the purpose of taxation, in this language:

" 'That they as a rule laid up in Toledo, when, through the rigor of the season, navigation was closed, and that the general manager had his office there, does not, in our judgment, operate to give them any such permanency of location as to subject them to taxation as property having a situs there.'

"See also, *Island Creek Fuel Co.* v. *Harshbarger,* 73 W. Va. 397, 80 S. E. 504; *St. Louis* v. *The Ferry Co.,* 11 Wall. 423, 20 L. Ed. 192.

"Ferry boats between Newport and Cincinnati were held to be taxable in Newport, where the owner was domiciled. The court said:

" 'Now such property—the ferry boats—is migratory, but for the purpose of taxation, etc., it must have an abiding place; and the law fixes that place at the home port, which is in this case, the city of Newport.' *City of Newport* v. *Berry* (Ky.), 19 S. W. 238, 239.

"See also, *Mayor, etc., of City of Mobile* v. *Baldwin,* 57 Ala. 61, 29 Am. Rep. 712; *State* v. *Haight,* 30 N. J. Law 428.

"There is an exception to the general rule that vessels engaged in interstate commerce can acquire a situs for taxation only at the domicile of the owner, and that is where such vessels have acquired a permanent situs elsewhere. Such was the case in *Old Dominion Steamship Co.* v. *Commonwealth of Virginia,* 102 Va. 576, 46 S. E. 783, 102 Am. St. Rep. 855; Id. 198 U. S. 299, 25

S. Ct. 686, 49 L. Ed. 1059, 3 Ann. Cas. 1100. This was a case in which the State Corporation Commission held that certain vessels of the Old Dominion Steamship Company were taxable under the laws of the State of Virginia. The boats in question were owned by a foreign corporation, and were registered outside the State of Virginia, yet, since the vessels plied wholly between points located within the State of Virginia, the Supreme Court held that the assessment made was a proper one. From the language of the Supreme Court of the United States, affirming the decision of our Supreme Court of Appeals, we quote the following:

" 'Vessels which, though engaged in interstate commerce, are employed in such commerce wholly within the limits of a State, are subject to taxation in that State, although they may have been registered or enrolled under U. S. Rev. Stat. §§ 4141 and 4311 [46 U. S. C. A. §§ 17, 251], at a port outside the limits of the State.'

"This case seemed to turn on the point that, although the vessels were owned and registered outside of the State, and although engaged in interstate commerce, they were so engaged wholly between points within this State. It might have been clearer to have said that the vessels were engaged in aiding interstate commerce, since they did not leave the jurisdiction of the State of Virginia, but plied wholly between ports in this State. At any rate, no question of situs for taxation at any particular locality was involved in the case, and no such question was decided. The question involved here did not arise in that case.

"The only other Virginia case touching the question here under consideration is *Norfolk & W. Ry. Co.* v. *Board of Public Works,* 97 Va. 23, 32 S. E. 779. The Norfolk and Western Railway Company, a Virginia corporation, with its principal office in Roanoke, owned certain tugs and barges, which were enrolled in Philadelphia, and used in connection with the moving of coal from Norfolk to northern and eastern points. The court held

that because these tugs and barges were engaged in interstate commerce did not exempt them from taxation, nor did the place of their enrollment or registration fix their situs for taxation. The court seemed to found its decision on the fact that they were owned by a Virginia corporation, and that they were not assessed for taxation elsewhere in or out of the State of Virginia made them property taxable in this State, in the county where they are always loaded. There is an inference at least that, if these vessels had been taxed at their place of enrollment, or at the home office of their owner, the decision would have been different.

"Without taking up in detail the cases cited by the applicant in support of its contention, we deem it sufficient to say that those which seem to support the contention of the applicant can be shown to have been decided on grounds which do not obtain here. In some instances, the peculiar wording of the statute is the controlling factor, such as the case of *Wisconsin Transp. Co.* v. *Village of Williams Bay,* 207 Wis. 265, 240 N. W. 136, or the peculiar provisions of a city charter as in *City of New Albany* v. *Meekin,* 3 Ind. 481, 56 Am. Dec. 522.

"The controlling question in all of the cases bearing on the question here under consideration is whether a permanent situs, apart from that of the domicile of the owner, was established; in other words, whether the vessels were physically located at a particular place. As said above, the Virginia statutes do not undertake to define situs, and it is upon a determination of situs that the applicability of the statute depends. Despite the emphasis placed by the applicant upon the fact that certain of the vessels, when not in use, are tied up for a longer time at Newport News than at Norfolk, there is nothing in the evidence to show that they are placed at Newport News for permanency, so as to become a part of the permanent mass of the property of Newport News, but, on the contrary, the evidence clearly shows that they were so placed to be used when ready, or when the demands of

traffic should require. At such time as they were tied up at either Norfolk or Newport News, they were performing no service for which they were intended, and such tie-up was only incidental, and, in contemplation of law, only temporary. The time of such tie-up does not change the fact that it was temporary, and does not suffice to establish a permanent location.

"In practically every one of the cases which have been called to our attention, the question for determination was whether a permanent situs, apart from that of the domicile of the owner, was established. In other words, whether the vessel was physically located at a particular place. In each of the cases, it was correctly considered that, if a permanent situs was established, the assessment should be at such situs, just as completely as if the statute had so expressly provided. In many of those cases, there existed every element of physical location or situs that is claimed to exist here, and yet, in practically every case, it was decided that such things do not establish a taxable situs, but that they are mere incidentals of the business; that a vessel, by its very nature and purpose, plying between ports, does not and cannot become incorporated in the general mass of property of any such port.

"To adopt the basis claimed by the applicant for establishing situs would involve grave uncertainty. Means would have to be employed to obtain accurate reports of the hours or days spent by a vessel in a particular port, or the days that the vessel was idle, either on account of lack of demand for its service, or because it was laid up in dry dock for repairs. We do not believe that the legislature of Virginia, in enacting the statutes so confidently relied upon by the applicant, intended that these statutes should apply to floating property such as is here involved, or that it was intended to abolish the common law rule of *mobilia sequuntur personam* as to such property, and that such statutes do not in fact abolish such rule when applied to vessels whose only purpose and reason for existence is to move from place to place, a fact which is inherently inconsistent with the idea of being permanently

located anywhere so as to become a part of the common mass of property at any particular spot, or at any particular taxing jurisdiction.

■ " 'Where a statute does not especially repeal or cover the whole ground occupied by the common law, it repeals it only when and in so far as directly and irreconcilably opposed in terms.' *Layton* v. *Brown,* 6 Va. Law Reg. (N. S.) 179; *Beavers' Adm'x* v. *Putnam's Curator,* 110 Va. 713, 67 S. E. 353.

■ "For each year since the beginning of the present operations of the applicant company in 1929, in making its report to the State Corporation Commission as required by section 221 of the Tax Code, it has reported all of the ferry boats or steamers, here involved, as being located at Norfolk. Prior to 1929, when the applicant company operated only the line from Norfolk to Newport News, and back to 1915, it has reported all of its vessels or ferry boats as being located at Norfolk. Therefore, for a period of nineteen years, the applicant itself considered Norfolk, where the home office is located, as the situs of said vessels for the purpose of taxation. Also, for the same period of time, the State Corporation Commission has made the assessment, based on such reports. It may, therefore, be concluded that, for this period of time, both the applicant and the Commission have followed a construction in direct opposition to the contention here made by the applicant. An administrative construction of such long standing, to say the least, is most persuasive, and should not be abandoned without compelling reasons therefor.

■ "We, therefore, conclude that the final order entered in this case is correct, and that all of the vessels should be assessed and taxed at Norfolk, except the coal barge No. 1, which the evidence shows to be permanently located at Newport News, and which the order assesses and taxes to that city."

The order of the State Corporation Commission is affirmed.

*Affirmed.*