The LIFE INSURANCE COMPANY OF VIRGINIA, Plaintiff,

v.

Mary E. CASHATT, Donna Lynn Cashatt, an infant, Randall Keith Cashatt, an infant, and Joe James Davis, Administrator of the Estate of Lola Vance Cashatt.

Civ. A. No. 3597.

United States District Court
E. D. Virginia,
Norfolk Division.

July 12, 1962.

Richard B. Spindle, III, and Willcox, Cooke, Savage & Lawrence, Norfolk, Va., for Life Ins. Co. of Virginia.

William A. Redfern and Devany & Redfern, Norfolk, Va., for J. James Davis, Admr.

Gordan E. Campbell and Wayne Lustig, Norfolk, Va., for Mary E. Cashatt.

Fred W. Bateman, Bateman & White, Newport News, Va., Beamer H. Barnes, Lexington, N. C., for guardian ad litem for infant defendants.

MICHIE, District Judge.

Mary Elizabeth Cashatt shot and killed her husband, Lola Vance Cashatt, and was subsequently convicted of voluntary manslaughter. At the time of his death, Lola Vance Cashatt was the owner of a policy of insurance issued by The Life Insurance Company of Virginia under which Mary Elizabeth Cashatt was the primary beneficiary and the insured's children, Donna Lynn Cashatt and Randall Keith Cashatt, were the contingent beneficiaries. Joe James Davis qualified as administrator of the estate of Lola Vance Cashatt in the Corporation Court of the City of South Norfolk. Mrs. Cashatt and the children subsequently

returned to North Carolina whence Mr. and Mrs. Cashatt had originally come.

The Life Insurance Company of Virginia filed an interpleader complaint in the United States District Court for the Eastern District of Virginia, Norfolk Division, making Mary Elizabeth Cashatt, the two children and the administrator parties, all of whom claim the proceeds of the policy. The court appointed Fred W. Bateman as guardian ad litem for the two infant children.

■ After the case had matured the plaintiff moved to be dismissed upon the payment of the proceeds of the policy into court as it was a mere stake-holder in the controversy. To this the attorney for Mrs. Cashatt objected on the ground that there was no real controversy between residents of different states, Mary E. Cashatt and the children having returned after the death of the father to North Carolina and the administrator having, in the opinion of counsel for Mrs. Cashatt, no possible claim to the insurance proceeds. The court overruled this motion since, as will be seen in the discussion to follow, though there is no Virginia case directly in point, in some states the claim of the administrator to the proceeds of the policy would be allowed while in others the contingent beneficiaries would be entitled to such proceeds. And of course Mrs. Cashatt also lays claim to the proceeds. And under 28 U.S.C.A. § 1335, jurisdiction of an interpleader action exists if there is any diversity of citizenship among the claimants and there is here diversity between the administrator and Mrs. Cashatt and the children. See Barron and Holtzoff, Federal Practice and Procedure, Vol. 1, Rules Ed., pp. 252–55.

There being no dispute about the facts, the case then came on to be heard upon motions for summary judgment filed by Mrs. Cashatt, the guardian ad litem for the infants and the administrator of the estate. And the court now finds that the infants are entitled to the proceeds of the policy.

■ There can be no doubt that the general rule, followed probably universally, is that a beneficiary of an insurance policy who kills the insured by murder or voluntary manslaughter cannot take the proceeds of the policy. This is because of the ancient common law doctrine that no man shall be allowed to profit by his own wrong. There is no Virginia case on the subject but other cases outside this jurisdiction are numerous and I do not find any case anywhere to the contrary. See 29–A Am.Jur. pp. 725 et seq.; 46 C.J.S. Insurance § 1171, p. 57 et seq.

There was some discussion in the argument, however, as to the effect, if any, of Section 64.18 of the Virginia Code as it stood at the time of Mr. Cashatt's death.* This section then read as follows:

> *"When homicide to bar acquisition of estate.*—No person shall acquire by descent or distribution, or by will, any interest in the estate of another for whose death such person has been convicted of murder."

The section took that form by amendment in 1950. Prior to 1950 it read as follows:

> *"When homicide to bar acquisition of estate.*—No person shall acquire by descent or distribution, or by will, any interest in the estate of another whom he has killed in order to obtain such interest."

It will be observed that the only change was in the substitution of the words "for whose death such person has been convicted of murder" for the words "whom he has killed in order to obtain such interest". Apparently the amendment effected two changes in the application of the section. One was to require a *conviction* as a prerequisite to the applica-

---

\* The section has since been amended (see Acts of Assembly, 1962, p. 418), at the instance of one of counsel in this case who is a member of the General Assembly, in order to set at rest certain of the questions hereinafter discussed. But the amendment can have no effect on this case.

tion of the section, it having been held in some states that even though a person were found not guilty when tried for murder the question could nevertheless be retried in a civil suit for the proceeds of the insurance where the burden of proving the murder could be carried by a preponderance of the evidence rather than proof beyond a reasonable doubt as required in the criminal case. See Carter v. Carter (Fla.), 88 So.2d 153. The use of the word "murder" instead of "whom he has killed in order to obtain such interest" extended the application of the section to any murder whether for the purpose of acquiring a property interest from the deceased or otherwise. In neither form does or did the statute extend to voluntary manslaughter since a killing "in order to obtain such interest" would always have been murder.

█ From the fact that this statute is and always has been applicable only to the acquisition of property by descent or distribution or by will, it is plain that it has no application to the collection of insurance proceeds and it is argued that since the Legislature has not seen fit to extend the statute to include insurance proceeds it did not intend the principle involved to apply to such proceeds.

The argument however overlooks the history of the section. It first appeared in the Code of 1919 as Section 5274 thereof. The revisors' note to the section simply says "This section is new." But the annotation says, "For discussion of this subject prior to this section see 1 Va.L.R.N.S. 465."

The reference to 1 Va.L.R.N.S. 465 turns out to be merely a supplemental note to an editorial in 20 Va.L.Reg. 947.

This editorial begins as follows:

"The—we might say almost universal—rule is that no man shall be allowed to profit by his own wrong: *Ex turpi causa oritus non actio;* and in most jurisdictions one old common-law disability has always attached to homicide—whether murder or manslaughter—i. e., that no felon who has committed homicide, or his assigns, can derive any benefit from the felonious act."

The editorial then goes on to call attention to a number of American cases in which it had been held that, despite the almost universal rule referred to, that rule as to descent, distribution and wills had been changed by the statutes which determine the course of descent and distribution and the right to take under wills and, these statutes having been enacted in derogation of the common law principle that a man cannot profit by his own wrong, murderers could under the statutes inherit and/or otherwise take property from those they had murdered since there was no exception in the statutes prescribing the general rules for the devolution of property to change the rule as to murderers.

Obviously § 5274 of the Code of 1919 was enacted as a result of that editorial. In fact towards the conclusion of the editorial the author says with reference to the principal case under discussion in the editorial:

"Whilst the logical side of the argument does appear to be with the Illinois court, we trust that the revisors of our Code will see to it that no decision of our Supreme Court shall be necessary to settle this question in accordance with the old rule laid down by the English courts."

The revisors obviously accepted the invitation so extended.

From this history the reason the statute was limited to taking by descent, distribution or will is obvious. There had (and still have) been no statutes passed with respect to the proceeds of insurance which in any way affected the doctrine that no man should be allowed to profit by his own wrong. And it was universally held then as now that a beneficiary under an insurance policy who had killed the insured, either by murder or voluntary manslaughter, could not take the proceeds of the policy. There was

therefore no occasion to make the statute applicable to insurance proceeds.

Nor do I think that anything can be made of the fact that the revisors, in providing against the possibility that the statutes relating to descent, distribution and wills might be construed as they had been in other states to permit a murderer to benefit from his crime, did not go further and include voluntary manslaughter in the statute. The revisors had undoubtedly read the editorial which, as we have seen, almost certainly occasioned the enactment of the statute in question. In the editorial it is plainly stated that the common law principle applied to manslaughter, apparently making no distinction between voluntary and involuntary manslaughter, although it is difficult to see how the principle could rightly have been applied to involuntary manslaughter. The revisors chose to narrow the rule as applied to descent, distribution and taking by will. They undoubtedly did this deliberately for reasons of their own. Possibly they thought that there would be less likelihood of controversy in the Legislature if the more restricted coverage involved in the new code section provided by them were proposed. Possibly they thought that in no event should the principle be applied unless in the language they used the killing was "in order to obtain such interest" which would almost certainly never apply to either voluntary or involuntary manslaughter. Nevertheless if they thought that the common law doctrine should be so limited they did not propose any statute to change it with respect to anything except inheritance, distribution and taking under wills. Perhaps they simply did not think of any other application of the doctrine such as the payment of insurance proceeds. Whatever may have been their motive I do not think that it can be successfully argued that their attempt to make certain that the statutes of descent, distribution and wills did not completely abolish the old common law rule can be said to indicate an intent on their part to change the common law rule with respect to insurance proceeds—and still less an intent on the part of the Legislature to do so, since the Legislature pretty much took the Code of 1919 on faith from the revisors.

This brings us to the more difficult question in the case: If the widow cannot take, who should take—the contingent beneficiaries or the administrator? In 29-A Am.Jur. p. 729 it is stated:

"§ 1647.—*Rights of Alternative Beneficiary.*—Where the insurance policy names several beneficiaries with varying rights, and the primary beneficiary is disqualified because of his murder of the insured, the disposition of the proceeds of the insurance policy is controlled by the terms of the policy relating to the rights of such beneficiaries. It may be stated as a general proposition which has the support of a majority of cases that when an insured has been murdered by the primary beneficiary, the proceeds of a life insurance policy will be paid to the persons named in the contract as secondary or contingent beneficiaries. There is also authority, however, for the view that in case of disqualification of the primary beneficiary because of his murder of the insured, the estate of the insured should be allowed to recover rather than the alternative beneficiary."

While my examination of the authorities indicates that the foregoing statement is probably correct in stating that a majority of the cases that have passed upon the question have held that under such circumstances the proceeds of the policy would be payable to the contingent beneficiaries, very certainly there is no overwhelming majority to that effect. The count is, as far as I have discovered, quite close.

Nevertheless I think the better reason is in line with the doctrine that the contingent beneficiaries should take. After all there could hardly be any doubt but that the insured would have so provided

414

if he had foreseen the circumstances. One reason why many people take out life insurance policies payable to named beneficiaries is to provide those beneficiaries with something which upon the death of the insured will not be subject to claims against the estate of the insured and undoubtedly if Mr. Cashatt had thought that his wife would be barred from taking the proceeds though still living he would have wished to have them paid to his children.

The argument to the contrary is to the following effect: the contingent beneficiaries by the terms of the policy were to take only if the wife were dead; the wife is not dead; therefore the contingent beneficiaries do not take; however the insurance company cannot be allowed to benefit by the murder; and therefore the proceeds must be an asset of the deceased's estate.

But there is as little reason for disregarding the terms of the policy and paying the proceeds to the insured's estate as there is for disregarding the terms with respect to the death of the wife and paying the proceeds to the contingent beneficiaries. So on the whole I feel that the better reason lies with those cases which have held the contingent beneficiaries entitled to take and I so hold in this case.

Incidentally, while the fact affords no legal reason for deciding this close question one way or the other, it is a matter of interest that if the insurance proceeds were in this case awarded to the estate rather than to the contingent beneficiaries Mrs. Cashatt could claim her statutory one-third of the estate since she has not been convicted of murder and the Virginia statute therefore would not bar her from claiming her share.

As the guardian ad litem has no right to receive property of the infants, a guardian of their property should be appointed and an order will then be entered providing for the payment of the insurance proceeds to that guardian.