# LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Harry L. White, Jr., et al.

v.

Home Beneficial Life
Ins. Co., etc., et al.

March 3, 1969

By JUDGE ALEX H. SANDS, JR.

The facts in this case raise the very interesting question as to whether or not the defendant, Harry L. White, III, is barred from participating as the named beneficiary under his wife's policy of insurance, in the proceeds thereof. The first consideration which arises is what effect, if any, Section 64.1-18 of the Code of Virginia has upon this question. The pertinent part of this section reads as follows:

> No person shall acquire by descent or distribution or by will any interest in the estate of another, nor receive any payment under any policy of life insurance upon the life of another, for whose death such person has been convicted of murder. In such event should any life insurance be payable, then it shall be paid as if such person predeceased the insured to such other person as may be named in the policy, or, if no such other person is named, then to the estate of the insured. Any insurer making payment according to the terms of its policy or contract shall not be subjected to additional liability by the terms of · this section if such payment is made without notice of

circumstances bringing it within the provisions of this section.

It is seen that the express language of this section is restricted to murder and does not include manslaughter in any degree. Thus, argues defendant, since he was convicted of voluntary manslaughter and not murder, the statute does not defeat his right as named beneficiary under the policy. Plaintiffs, on the other hand argue that as the statute does not include by name the crime of voluntary manslaughter, that this offense is governed by the common law rule which is that a beneficiary under an insurance policy who kills the assured by murder or voluntary manslaughter cannot take the proceeds of the policy. See *Life Insurance Co. of Va.* v. *Cashatt*, 206 F.Supp. 410 (E.D.Va. 1962), 29A Am. Jur. 7251; 46 C.J.S. *Insurance* Sec. 1171, p. 57; *Metropolitan Life Ins. Co.* v. *Wenckus*, 244 A. 2d 424 (Me. 1968).

Knowledge of the legislative history of this section is necessary to a disposition of this issue. (For an excellent summary of the situation leading up to the first legislative expression on this question in Virginia by the 1919 legislature see editorial in 20 *Va. Law Reg.* beginning at page 947.)

The common law rule (*supra*), followed in Virginia prior to 1919, was that no felon who committed homicide in any degree could derive any benefit from his felonious act under a policy of insurance upon the life of the person murdered. While this rule of the common law appears to have been strictly adhered to without exception in England over the years, see *Cleaver* v. *Mutual Reserve etc. Fund Ass'n.*, L.R. [1892] 1 Q.B. 147 (Ct. App. 1891), yet in a number of jurisdictions in the United States the Courts were early beginning to recognize an exception to this rule where the felon would otherwise be entitled to participate as a distributee in the estate of the deceased under the laws of descent of the particular state. In *Owens* v. *Owens*, 100 N.C. 240, 6 S.E. 794 (1888), a widow convicted as an accessory in her husband's murder was held entitled to dower in his lands. In *Deem* v. *Millikin*, 53 Ohio St. 668, a son who murdered his mother for the purpose of procuring her property was allowed to succeed to the title of her real estate

by virtue of the statute of descent in that state. In *Shellenberger* v. *Ransom*, 41 Neb. 631, while the Court at first adhered to the common law rule, later, upon rehearing, reversed itself and permitted a father who murdered his daughter in order to get her property to take title thereto under the laws of descent of that state.

As pointed out in *Cashatt* these rulings were bottomed on the concept that these descent and distribution statutes having been enacted in derogation of the common law principle that a man cannot profit by his own wrong, and these statutes making no exception for felons causing the death of the person from whom he would take, that murderers must be held entitled to inherit or otherwise take property under these statutes.

In 1919 the Virginia Legislature, evidently outraged by the result being accomplished by these holdings and fearful that the Virginia Supreme Court would follow a similar line of reasoning when the question should arise, adopted a statute (Code 1919, Section 5274) designed to cure this evil, this statute reading:

> No person shall acquire by descent or distribution, or by will, any interest in the estate of another whom he has killed in order to obtain such interest.

A *conviction* of murder not being a prerequisite to the application of the statute so drafted, and some states with similarly worded statutes having held that a person charged with murder and acquitted could be confronted by the same charge in a civil suit to recover the proceeds of the policy where the burden of proving the murder could be carried by a preponderance of evidence rather than proof beyond a reasonable doubt, the Virginia Legislature in 1950 amended the statute to read:

> No person shall acquire by descent or distribution, or by will, any interest in the estate of another for whose death such person has been *convicted* of murder.

At the time *Cashatt* was decided the present Section 64.1-18 (which added the payment under a policy of life insurance to the category of situations in which a murderer was barred from participation) had not been passed and the Court properly held the common law rule to be applicable to persons convicted of either murder or voluntary manslaughter and barred recovery by one convicted of the latter offense from participating as named beneficiary in the proceeds of the policy.

The case at bar arises under the 1962 amendment and is, therefore, a case of first impression in this State as to the effect of the statute upon the rights of one convicted of voluntary manslaughter (but not murder) to receive the proceeds of a life insurance policy upon the life of the deceased naming him prime beneficiary. Indeed insofar as the Court can determine it is a case of first impression in the country. Plaintiffs rely upon the case of *Metropolitan Life Ins. Co.* v. *Wenckus* (Maine 1968), *supra*, but Maine, at the time had no statute similar to Va. Code, Section 64.1-18 so that presumably the case was decided upon common law principles.

Why, then, did the 1962 legislature elect to extend the bar only to the crime of murder and not include the crime of voluntary manslaughter? Plaintiffs urge that the use of the term "homicide", which includes both murder and voluntary manslaughter, in the title is indicative of the legislative intent that the section should apply to both murder and voluntary manslaughter. The title to an act is simply an index of what is contained therein, *Casto* v. *Upshur County High School Board*, 94 W.Va. 513, 119 S.E. 470 (1923), and the language of the title would, therefore, be of little help in the interpretation of the language of the statute itself. From the above it is obvious that the legislature never intended to *repeal* or to *weaken* the common law bar preventing inheritance by the culprit, but on the contrary, the purpose of 64.1-18 and its ancestors was to *preserve* the bar and to protect it from the erosive effects of certain inheritance statutes upon the efficacy of the common law bar.

It would be strange legislation indeed which intended *by inference* to destroy this common law bar

which it had endeavored over the years to protect. It is, moreover, the accepted rule of statutory interpretation followed in this jurisdiction that even a statute which undertakes to *repeal* a common law concept, will repeal only that part of the common law concept with which it is in irreconcilable conflict. *Newport News* v. *Comm.*, 165 Va. 635 (1936), 17 Mich. Jur., *Statutes* § 57, p. 317. Our Court of Appeals has held that the common law is not to be considered as altered or changed by a statute *unless the legislative intent is plainly manifested. Hannabass* v. *Ryan*, 164 Va. 519 (1935).

In view of this rule of statutory interpretation, this Court, to adopt defendants' argument would have to find that the language employed in 64.1-18 is a plain manifestation of its intention to lift the common law bar as to voluntary manslaughter as distinguished from murder. As to murder the statute is merely declaratory of the common law.

Just why the legislature deemed it unnecessary to extend to the common law bar relating to voluntary manslaughter the same protection against the effects of the inheritance statutes as it extended to murder is a matter upon which this Court is not called to speculate.

It is accordingly held that while voluntary manslaughter is not affected by Section 64.1-18 one way or the other that as to voluntary manslaughter, the common law bar is still applicable and defendant White is not, therefore, entitled to take as beneficiary under the policy in question.

This leaves open only the question as to whether the children of the deceased, who are not named beneficiaries may receive the proceeds of the policy.

The answer filed by the Home Beneficial Insurance Company alleges that if defendant White, the named beneficiary is unable to take, that it would consider the estate of the deceased as the contingent beneficiary. The policy provides that if the beneficiary be the estate of the insured that the company may make payment to "any relative by blood . . . of the insured . . . ." It is accordingly held that payment of the proceeds, under the evidence in the case should be paid to the children and they being under age and the amount under $2,500.00, it will be

ordered paid to the maternal grandmother, under the statute, to be used by her for the education, support and maintenance of the children.